1

2

3

4

5

6

7

8

9

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

10

JERRY HOANG, et al.,

CASE NO. C17-0874JLR

11

Plaintiffs,

ORDER

12

v.

13

BANK OF AMERICA, N.A., et al.,

14

Defendants.

15

## I.    INTRODUCTION

16

Before the court are three motions, two filed by Plaintiffs Jerry Hoang and Le

17

Uyen Nguyen (collectively, "Plaintiffs") and one filed by Defendants Bank of America,

18

N.A. ("BANA"), Federal National Mortgage Association ("Fannie Mae"), Mortgage

19

Electronic Registration Systems, Inc. ("MERS"), and BAC Home Loans Servicing, LP

20

(collectively, "Defendants").  Plaintiffs move to amend their complaint and further move

21

for summary judgment regarding "subject matter jurisdiction and/or judicial authority."

22

(MTA (Dkt. # 51); Pls. MSJ (Dkt. # 55) at 1.)  Defendants move for summary judgment

on Plaintiffs' Truth in Lending Act ("TILA") rescission claims.  (Defs. MSJ (Dkt. # 46).)

The parties oppose each other's motions.  (MTA Resp. (Dkt. # 64); Pls. MSJ Resp. (Dkt.

# 69); Defs. MSJ Resp. (Dkt. # 58).)  The court has considered the motions, the parties'

submissions, the relevant portions of the record, and the applicable law.  Being fully

advised,[1] the court GRANTS Plaintiffs' motion to amend; DENIES Plaintiffs' motion for

summary judgment and GRANTS summary judgment to Defendants on the issue of the

constitutionality of various statutes governing retirement and senior status of judges; and

GRANTS in part and DENIES in part Defendants' motion for summary judgment.

## II.   BACKGROUND

This suit centers on Plaintiffs' desire to rescind a home loan they received from

BANA.  (Compl. (Dkt. # 1-1) ¶ 1.1.)  The court details the factual background before

summarizing the procedural background of this matter.

**A.   Factual Background**

In December 2004, Plaintiffs purchased a property in Tukwila, Washington, and

they subsequently refinanced their home loan with BANA.  (Stastny Decl. (Dkt. # 47)

¶ 3, Ex. 1 ("Hoang Dep.") at 13:18-21; Hoang Decl. (Dkt. # 59) ¶ 2; Nguyen Decl. (Dkt.

# 60) ¶ 2.)  The loan with BANA had an original principal amount of $288,000.00 with a

fixed interest rate of 5.625%, secured by a deed of trust on their Tukwila property.

(Magaddino Decl. (Dkt. # 49) ¶ 3; Hoang Dep. at 28:23-29:7.)  On April 30, 2010,

---

[1] No party requests oral argument on any of the three motions.  (*See* Pls. MSJ at 1; Pls. MSJ Resp. at 1; MTA at 1; MTA Resp. at 1; Defs. MSJ at 1; Defs. MSJ Resp. at 1.)  The court further finds that oral argument would not be helpful to its disposition of the motions.  *See* Local Rules W.D. Wash. LCR 7(b)(4).

1    Plaintiffs executed the loan documents with a notary present and recall signing "a lot" of

2    documents.  (Hoang Dep. at 37:3-17, Ex. 9 ("Deed of Trust") at 11; Stastny Decl. ¶ 3, Ex.

3    2 ("Nguyen Dep.") at 10:17-23, 12:1-12.)

4          Two disclosures required by TILA are of particular relevance:  a notice of the right

5    to rescind and a TILA disclosure statement ("Disclosure Forms").  12 C.F.R.

6    § 1026.23(a) (b)(1) (requiring two copies of notice of right to rescind and other relevant

7    disclosures to each consumer entitled to rescind); 15 U.S.C. § 1602(v).  Ms. Susan

8    Magaddino, an Assistant Vice President with BANA, attests that Plaintiffs' loan file

9    contains "signed disclosures and acknowledgements of receipt of all TILA disclosures,

10   and all additional signed disclosures/notices are in the loan file as well, including the

11   [TILA] Statement and multiple executed copies of the Notice of Right to Cancel."

12   (Magaddino Decl. ¶ 7.)  Defendants submit several copies of the Disclosure Forms, all

13   signed by Plaintiffs on April 30, 2010.  (*Id.* ¶ 7, Ex. 28 ("Disclosure Forms").)

14   Moreover, Plaintiffs signed a separate Borrower's Affidavit certifying that they "received

15   two completed copies of the Notice of Right to Cancel along with a copy package

16   containing all loan documents."  (*Id.* ¶ 8, Ex. 29 ("Borrower's Aff.").)  Ms. Noemi

17   Garcia, the Escrow Officer and Notary Public present for Plaintiffs' loan closing, states

18   that it was her "common practice to provide borrowers copies of all of the loan

19   documents presented to them for review and signature after they had completed signing

20   all of the required loan documents."  (Garcia Decl. (Dkt. # 48) ¶¶ 2-3, 5.)

21         Plaintiffs "do not specifically recall" receiving the Disclosure Forms at the loan

22   closing.  (Hoang Decl. ¶ 2; Nguyen Decl. ¶ 2; *see also* Nguyen Dep. at 12:4-6.)  They

further "do not recall" signing the Borrower's Affidavit.  (Hoang Decl. ¶ 3; Nguyen Decl. ¶ 3.)  Plaintiffs do remember that after signing various documents, the paperwork was taken by staff to be copied and then returned in "folders of materials" that were given to Mr. Hoang.  (Hoang Decl. ¶¶ 4-5; Nguyen Decl. ¶¶ 4-5; *see also* Nguyen Dep. at 12:7-12.)  They attest that "none of the TILA 'Notice of Right to Cancel Forms' . . . or the [Borrower's Affidavit] . . . were included in those folders."  (Hoang Decl. ¶ 5; Nguyen Decl. ¶ 5 (identical quote).)

It is undisputed that Plaintiffs did not rescind the loan within three business days of the loan execution.  (Magaddino Decl. ¶ 4; Hoang Dep. at 43:15-16.)  Plaintiffs made payments on the loan through 2010.  (Magaddino Decl. ¶ 5, Ex. 10.)  But starting in November, they began sending letters, styled as "Notices," to BANA seeking to invalidate the loan.  (*Id.* ¶ 6, Exs. 11-26.)  For instance, Plaintiffs sent BANA a series of questions after "[i]nformation has recently come to light that raises serious questions about who has the note on the property," including a warning that "silence can only be equated with fraud."  (*Id.*, Ex. 11 at 1-2 (all caps and emphasis removed); *see also id.* Ex. 16 (disputing that original loan document "exists or is in [BANA's] hands").)  After receiving no response, Plaintiffs declared that BANA was "in Default."  (*Id.*, Ex. 12 at 1.)  They made one additional payment in June 2011, which was reversed for lack of funds.  (*Id.*)  Since then, Plaintiffs have made no further payments and sent a letter demanding rescission pursuant to TILA on April 15, 2013.  (*Id.*; Compl. ¶ 4.5.)

On May 9, 2013, Mr. Hoang filed suit in King County Superior Court against BANA and others claiming interest in the lien or property.  (Stastny Decl. ¶ 4, Ex. 3

("2013 Compl.") at 1.)   Mr. Hoang alleged that BANA could not "show proper . . . ownership of [his] original Promissory Note and Deed of Trust" and therefore could not "establish that the Deed of Trust . . . and/or Note, were legally or properly acquired."  (*Id.* ¶¶ 24-25.)  Thus, he brought a quiet title claim as well as two claims of conversion for wrongfully collecting payments on the loan.  (*Id.* ¶¶ 128-29; 165)  Defendants removed the case in June 2013.  (Stastny Decl. ¶ 6, Ex. 5 at 2.)  Judge John C. Coughenour dismissed Mr. Hoang's suit without prejudice, holding that no foreclosure had been initiated and thus, there was no live case or controversy to adjudicate.  *Hoang v. Bank of America, N.A., et al.*, No. C13-1013JCC, 2013 WL 12075009, at *1, 3 (W.D. Wash. Aug. 15, 2013).  Moreover, the court held that nothing "support[ed] the theory that the original deed of trust is invalid"; "[I]f Mr. Hoang fails to pay his mortgage loan, the holder of the note has the right to foreclose on Mr. Hoang's property to recover the amount Mr. Hoang owes it."  *Id.*  Mr. Hoang appealed, and the Ninth Circuit affirmed.  (Stastny Decl. ¶ 6; *see Hoang v. Boank of America, N.A.*, 644 F. App'x 732 (9th Cir. 2016).

Defendants initiated a foreclosure proceeding on Plaintiffs' property in February 2017.  (Compl. ¶ 4.9.)  This suit followed.

**B.   Procedural Background**

Mr. Hoang filed suit in King County Superior Court on May 9, 2017.  (Compl. ¶ 6.1.)  Defendants removed the action to federal court (Not. of Removal (Dkt. # 1)) and moved to dismiss, arguing that Plaintiffs' TILA claims were time-barred.  (MTD (Dkt. # 4).)  The court granted Defendants' motion and held that although TILA does not establish a statute of limitations for rescission enforcement claims, some limitations

1   period must apply to a borrower's claim to enforce a stalled rescission.  (11/16/17 Order

2   (Dkt. # 16) at 17-20.)  Thus, the court borrowed TILA's one-year statute of limitations

3   for damages claims and dismissed Plaintiffs' suit as untimely because it was brought four

4   years after Defendants' failure to respond to their rescission notice.  (*Id.* at 20-21.)

5   Because amendment would be futile to cure Plaintiffs' time-barred claims, the court

6   declined to grant leave to amend.  (*Id.* at 22.)

7          On appeal, the Ninth Circuit reversed and remanded the case.  *Hoang v. Bank of*

8   *America, N.A.*, 910 F.3d 1096, 1099 (9th Cir. 2018).  Although the Ninth Circuit agreed

9   that "there is a statute of limitations applicable to TILA rescission enforcement actions,"

10  it held that "contract law provides the best analogy" and thus adopted the six-year

11  limitation period under Washington law for general contract law claims.  *Id.* at 1101.  In

12  so holding, the Ninth Circuit clarified that Plaintiffs' damages claim was brought under

13  the Washington Consumer Protection Act ("CPA").  *Id.* at 1099.  Because Plaintiffs'

14  claims were not time-barred, the Ninth Circuit concluded that the court improperly

15  denied leave to amend, as amendment may not have been futile.  *Id.* at 1102-03.

16         On remand, the court set a new case schedule.  (*See* 4/10/20 Min. Order (Dkt.

17  # 45).)  The parties had to submit amended pleadings by December 23, 2020, complete

18  discovery by February 22, 2021, and file any dispositive motions by March 23, 2021.

19  (*Id.*)  Defendants filed their motion for summary judgment on December 3, 2020.  (*See*

20  Defs. MSJ.)  On December 17, 2020, Plaintiffs moved to amend their complaint and

21  moved for summary judgment on subject-matter jurisdiction on December 31, 2020.  (*See*

22  MTA; Pls. MSJ.)

# III.     ANALYSIS

The court now turns to the three pending motions.  The court first addresses Plaintiffs' motion to amend their complaint and then turn to the parties' summary judgment motions.

## A.     Plaintiffs' Motion to Amend

Plaintiffs seek to amend their complaint in various ways.  First, they seek to clarify factual allegations regarding when Defendants received the notice of rescission and make explicit Plaintiffs' CPA claim, which had originally only been referenced in the prayer for relief section.  (MTA at 2; Prop. Am. Compl. (Dkt. # 51-1) ¶¶ 4.7-4.14.)  Additionally, Plaintiffs add several paragraphs summarizing the procedural background, including legal argument that this court and the Ninth Circuit violated the principle of party presentation in the previous appeal.  (Prop. Am. Compl. ¶¶ 3.1-3.15.)  Finally, Plaintiffs add a claim for a declaratory judgment "to have judicial officer Robert [sic] disqualified."  (*Id.* ¶¶ 5.3, 8.1(1)-(2).)  Defendants oppose amendment.  (*See* MTA Resp.)

At the outset, the court admonishes Plaintiffs for neglecting to follow the Local Rules in seeking amendment.  Local Rule 15 requires parties seeking amendment to "indicate on the proposed amended pleading how it differs from the pleading that it amends by bracketing or striking through the text to be deleted and underlining or highlighting the text to be added."  Local Rules W.D. Wash. LCR 15.  Plaintiffs have not done so.  (*See* Prop. Am. Compl.)  Despite Plaintiffs' noncompliance, the parties have completed briefing on the merits of amendment, and in the interest of avoiding further delay, the court proceeds to consider the motion.  However, the court directs Plaintiffs'

1    counsel to review his responsibilities under the Local Rules, including his obligation to

2    "ensure that all filings comply with all local rules of this court." *See* Local Rules W.D.

3    Wash. LCR 83.1(d)(2).

4        Because Plaintiffs filed their motion before the deadline to amend pleadings (*see*

5    4/10/20 Min. Order), Federal Rule of Civil Procedure 15 supplies the rule of decision.

6    *See Johnson v. Mammoth Recreations, Inc.*, 975 F.2d 604, 607 (9th Cir. 1992).  Under

7    Rule 15, the court should "freely give" leave to amend a pleading "when justice so

8    requires."  Fed. R. Civ. P. 15(a)(2).  Five factors are considered:  (1) bad faith, (2) undue

9    delay, (3) prejudice to the opposing party, (4) futility of amendment, and (5) whether the

10   party has previously amended its pleading.  *Allen v. City of Beverly Hills*, 911 F.2d 367,

11   373 (9th Cir. 1990) (citing *Ascon Props., Inc. v. Mobil Oil Co.*, 866 F.2d 1149, 1160 (9th

12   Cir. 1989)).  The third factor of prejudice is the "touchstone of the inquiry."  *Eminence*

13   *Capital, LLC v. Aspeon*, *Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).  The burden is on the

14   party opposing amendment to show that amendment is not warranted.  *Wizards of the*

15   *Coast, LLC v. Cryptozoic Entm't, LLC*, 309 F.R.D. 645, 649 (W.D. Wash. 2015).

16       Defendants oppose amendment under two factors, arguing that there is undue

17   delay and that amendment would prejudice them.  (MTA Resp. at 4-7.)  Beginning with

18   the "touchstone of the inquiry," the court does not find sufficient prejudice to weigh

19   against amendment.  Defendants complain that amendment would "forc[e] them to incur

20   additional, unnecessary litigation costs," but Defendants also concede that the proposed

21   amendments "add[] little substance . . . other than correcting a minor clerical error,

22   recasting their declaratory judgment claims also as a [CPA] claim, and to further . . . [an]

1   attack upon the judiciary and the Honorable Judge Robart's qualifications." (MTA Resp.

2   at 6-7.) Although Defendants allege Plaintiffs bring a new CPA claim (*see id.* at 7), the

3   Ninth Circuit had made clear that Plaintiffs brought a CPA claim for damages in their

4   original complaint, *see Hoang*, 910 F.3d at 1099 ("Hoang's prayer for relief requested

5   monetary damages under the [CPA].").[2] Furthermore, Defendants will not be prejudiced

6   by the constitutional claim, as the court grants summary judgment to Defendants on the

7   issue. *See infra* § III.B. Nor will this amended complaint disturb Defendants' pending

8   motion for summary judgment. *See infra* § III.C. Thus, Defendants are not so prejudiced

9   by the correction of "a minor clerical error" such that the court should contravene the

10  policy of liberally granting leave to amend.

11      The court also finds no undue delay. Undue delay looks at (1) the length of the

12  delay from when the moving party obtained relevant facts; (2) whether discovery has

13  closed; and (3) proximity to trial. *Texaco, Inc. v. Ponsoldt*, 939 F.2d 794, 798-99 (9th

14  Cir. 1991). Although Defendants are correct that Plaintiffs' proposed amendments come

15  two years after remand (MTA Resp. at 5), the court notes that the parties began

16  settlement discussions shortly after remand (*see* 3/22/19 JSR (Dkt. # 29); 5/14/19 Order

17  (Dkt. # 37)), and the COVID-19 pandemic has affected both parties' ability to litigate this

18  matter, (*see* 4/9/20 Stip. (Dkt. # 42)). Indeed, Plaintiffs' counsel declares that his age and

19  health concerns during the pandemic have been the primary cause of delay. (*See* 2d

20

21      [2] Defendants allege that the TILA rescission claim was "the only claim at issue in the
    original Complaint." (MTA Resp. at 7.) Not so. *See Hoang*, 910 F.3d at 1099. Thus, any
    prejudice Defendants claim would result from "not [having] the opportunity to depose Plaintiffs
22  regarding [the CPA claim]" is not attributable to the proposed amendments.

1    Stafne Decl. (Dkt. # 68) ¶¶ 2-5.)  Plaintiffs filed the motion to amend two months before

2    the close of discovery, three months before the dispositive motion deadline, and six

3    months before trial.  (*See* MTA; 4/10/20 Min. Entry.)  Under these circumstances, there is

4    not sufficient delay to warrant denial.

5          Defendants request that if amendment is granted, then the court should extend case

6    deadlines and impose sanctions on Plaintiffs to pay any costs incurred by Defendants.

7    (MTA Resp. at 8-9.)  Courts may impose conditions upon granting leave to amend, but

8    only when "the original pleading was faulty."  *Gen. Signal Corp. v. MCI*

9    *Telecommunications Corp.*, 66 F.3d 1500, 1514 (9th Cir. 1995).  In *General Signal*

10   *Corporation*, the Ninth Circuit found imposition of costs was appropriate because the

11   original claims were meritless and the amendment, which removed those claims,

12   constituted "backpedaling" for which the court was right to compensate the opposing

13   party.  *Id.*  Defendants make no such showing here; indeed, Defendants are the ones who

14   "mistakenly omitted" certain exhibits to the Complaint when they removed the case.  (*See*

15   MTA Resp. at 2 n.1.)  Therefore, the court finds no occasion to impose conditions on the

16   grant of leave to amend.

17   **B.    Plaintiffs' Motion for Summary Judgment**

18         Having determined the operative complaint, the court now turns to Plaintiffs'

19   motion for summary judgment on their constitutional claim.  Plaintiffs argue that because

20   the undersigned has elected to take "senior status" pursuant to 28 U.S.C. § 371(b)(1), he

21   is unconstitutionally "exercis[ing] Article III judicial power without having that 'good

22   behaviour tenure' required by the Constitution."  (Pls. MSJ at 9.)  Defendants are correct,

1   and Plaintiffs concede, that Plaintiffs' counsel, Mr. Scott Stafne, has—unsuccessfully—

2   attacked the ability of senior judges to adjudicate cases and attempted to disqualify senior

3   jurists in two previous cases in the Western District of Washington, both of which were

4   affirmed on various grounds by the Ninth Circuit.  (Pls. MSJ Resp. at 1; Stafne Decl.

5   (Dkt. # 56) ¶¶ 5-10.)  Here, Plaintiffs style their challenge as one that robs this court of

6   subject-matter jurisdiction or judicial authority to hear this matter.[3]  (Pls. MSJ at 1.)

7   　　　Like the courts that have previously considered this issue, the court finds

8   Plaintiffs' constitutional challenge to "senior status" meritless.  *See Bank of N.Y. Mellon*

9   *v. Stafne*, 824 F. App'x 536, 536 (9th Cir. 2020) ("[Mr. Stafne's] argument that the senior

10  district judge who heard his case was a 'retired judge' merely 'acting as an Article III

11  judge in this case,' is without merit.").  "Senior judges 'are, of course, life-tenured Article

12  III judges.'"  *Id.* (quoting *Nguyen v. United States*, 539 U.S. 69, 72 (2003)); *see also*

13  *Booth v. United States*, 291 U.S. 339, 350 (noting that retired federal judges, as

14  contrasted to resigned judges, continue to hold office of judge and may continue to

15  perform services as judge).  That is, senior judges were constitutionally nominated by the

16  President, confirmed by the Senate, and "retain the office" even when electing senior

17  status.  *See* 28 U.S.C. § 371(b)(1).  Tellingly, Plaintiffs offer no judicial authority to the

18  contrary, relying instead on a law review article to underpin its constitutional argument.

19  (*See* Pls. MSJ at 8-13 (quoting David R. Stras & Ryan W. Scott, *Are Senior Judges*

20  //

21  ――――――――――――――――――――
    [3] Ironically, Plaintiffs simultaneously ask for a declaratory judgment, which would of

22  course be impossible if Plaintiffs were correct that the undersigned "can no longer exercise the
    judicial power of an Article III court."  (*See* Pls. MSJ at 2.)

1   *Unconstitutional*, 92 Cornell L. Rev. 453 (2007))); *see also Stafne v. Zilly*, 337 F. Supp.

2   3d 1079, 1098 (W.D. Wash. 2018) (noting that "no case law" supported finding senior

3   status unconstitutional).

4        Accordingly, the court denies Plaintiffs' motion for summary judgment and grants

5   summary judgment on this issue to Defendants.  "[W]here the party moving for summary

6   judgment has had a full and fair opportunity to prove its case, but has not succeeded in

7   doing so, a court may enter summary judgment *sua sponte* for the nonmoving party."

8   *Albino v. Baca*, 747 F.3d 1162, 1176 (9th Cir. 2014); *see* Fed. R. Civ. P. 56(f).  Here,

9   Plaintiffs was on notice to "come forward with all of [their] evidence," as they had ample

10   opportunity to present their argument in both their original motion and their reply.  *See*

11   *Celotex Corp. v. Catrett*, 477 U.S. 317, 326 (1986).  Even when viewing the evidence

12   most favorably to Plaintiffs, there is no genuine dispute of material fact on the

13   constitutionality of "senior status," and Plaintiffs' legal arguments are unavailing.  Thus,

14   the court finds that the record on this issue is sufficiently developed such that summary

15   judgment may be granted *sua sponte* for Defendants.

16   **C.**   **Defendants' Motion for Summary Judgment**

17        The court now turns to the remaining motion for summary judgment filed by

18   Defendants.  Summary judgment is appropriate if the evidence shows "that there is no

19   genuine dispute as to any material fact and the movant is entitled to judgment as a matter

20   of law."  Fed. R. Civ. P. 56(a); *see Celotex Corp.*, 477 U.S. at 322; *Galen v. Cty. of L.A.*,

21   477 F.3d 652, 658 (9th Cir. 2007).  A fact is "material" if it might affect the outcome of

22   the case.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A factual dispute is

1  "'genuine' only if there is sufficient evidence for a reasonable fact finder to find for the

2  non-moving party." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 992 (9th Cir. 2001)

3  (citing *Anderson*, 477 U.S. at 248-49).

4          The moving party bears the initial burden of showing there is no genuine dispute

5  of material fact and that it is entitled to prevail as a matter of law.  *Celotex*, 477 U.S. at

6  323.  If the moving party does not bear the ultimate burden of persuasion at trial, it can

7  show the absence of such a dispute in two ways:  (1) by producing evidence negating an

8  essential element of the nonmoving party's case, or (2) by showing that the nonmoving

9  party lacks evidence of an essential element of its claim or defense.  *Nissan Fire &*

10 *Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1106 (9th Cir. 2000).  If the moving party

11 meets its burden of production, the burden then shifts to the nonmoving party to identify

12 specific facts from which a fact finder could reasonably find in the nonmoving party's

13 favor.  *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 252.

14         The court is "required to view the facts and draw reasonable inferences in the light

15 most favorable to the [nonmoving] party."  *Scott v. Harris*, 550 U.S. 372, 378 (2007).

16 The court may not weigh evidence or make credibility determinations in analyzing a

17 motion for summary judgment because those are "jury functions, not those of a judge."

18 *Anderson*, 477 U.S. at 249-50.  Nevertheless, the nonmoving party "must do more than

19 simply show that there is some metaphysical doubt as to the material facts . . . .  Where

20 the record taken as a whole could not lead a rational trier of fact to find for the

21 nonmoving party, there is no genuine issue for trial."  *Scott*, 550 U.S. at 380 (internal

22 //

ORDER - 13

1   quotation marks omitted) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,

2   475 U.S. 574, 586-87 (1986)).

3       Defendants argue for summary judgment on Plaintiffs' TILA rescission

4   enforcement claims for three reasons:  (1) Plaintiffs received the required TILA

5   disclosures and thus should have, but did not, give their notice to rescind within three

6   business days; (2) Plaintiffs have not established ability to tender; and (3) claim and issue

7   preclusion bar Plaintiffs' TILA claims.  (Defs. MSJ at 8-16.)  Even if Plaintiffs' claims

8   were valid, Defendants maintain that the claims fail against MERS as a matter of law.

9   (*Id.* at 16.)  The court agrees that MERS is entitled to summary judgment but disagrees

10  with Defendants' remaining claims.

11      1.   MERS as "creditor"

12      The rescission requirements offered by TILA apply only to a "creditor."  15

13  U.S.C. § 1635(b); *see also id.* § 1602(g) (defining creditor as one "to whom the debt

14  arising from the consumer credit transaction is initially payable on the face of the

15  evidence of indebtedness").  Defendants argue that MERS is not a "creditor," as MERS is

16  not listed as the lender on the deed of trust.  (Defs. MSJ at 16.)  Plaintiffs make no

17  argument in response.  (*See* Defs. MSJ Resp.)  The court concludes that MERS is, as

18  stated on the deed of trust, a "nominee for Lender and Lender's successors and assigns"

19  and thus not a "creditor" under TILA.  (*See* Deed of Trust at 2.)  Accordingly, the court

20  GRANTS summary judgment on the TILA rescission claims to MERS.

21  //

22  //

ORDER - 14

1       2.   TILA Disclosures

2       Pursuant to TILA, borrowers may rescind their loan within three days of closing,

3  but that rescission period extends to three years if the lender fails to deliver "the required

4  notice or material disclosures."  12 C.F.R. 1026.23(a)(3)(i); *see also* 15 U.S.C. § 1635(a),

5  (f).  Defendants argue that they did provide the required disclosures, and thus, Plaintiffs

6  only had three days to rescind.  (Defs. MSJ at 8-10.)  Because Plaintiffs did not do so,

7  Defendants argue that the TILA rescission claims are untimely.  (*Id.* at 10.)

8       A signed acknowledgement that the borrowers received the required materials

9  creates a rebuttable presumption of proper delivery.  15 U.S.C. § 1635(c).  Defendants

10  submit signed copies of the Disclosure Forms as well as a signed Borrower's Affidavit

11  acknowledging that Plaintiffs had received copies of the required disclosures.  (*See*

12  Disclosure Forms; Borrower's Aff.)  They bolster this evidence with declaration

13  testimony from Ms. Magaddino that Plaintiffs' loan file contains signed disclosures and

14  acknowledgements and from Ms. Garcia that it was her common practice to provide

15  borrowers "copies of all of the loan documents presented to them for review and

16  signature."  (Magaddino Decl. ¶¶ 7-8; Garcia Decl. ¶ 5.)  This evidence creates a

17  rebuttable presumption that Defendants properly delivered the required TILA disclosures

18  to Plaintiffs.  *See Balderas v. Countrywide Bank, N.A.*, 664 F.3d 787, 790 (9th Cir. 2011).

19       The statutes and regulations offer no guidance as to what evidence is necessary to

20  overcome this rebuttable presumption.[4]  Federal Rule of Evidence 301 generally provides

21

22       [4] Nor has the Ninth Circuit addressed this issue on summary judgment.  *Balderas*—the
only Ninth Circuit authority either party cites on this issue (*see* Defs. MSJ Resp. at 14-15; Defs.

1    that "the party against whom a presumption is directed has the burden of producing

2    evidence to rebut the presumption" but emphasizes that it "does not shift the burden of

3    persuasion." Fed. R. Evid. 301.  Here, Plaintiffs submit declarations attesting that

4    although they "do not specifically recall" signing or receiving the Disclosure Forms on

5    April 30, 2010, they do recall that "[n]one of the TILA [disclosure forms] or the

6    [Borrower's Affidavit] were included" in the folders of materials that were given to them

7    upon closing.  (Hoang Decl. ¶¶ 2-5; Nguyen Decl. ¶¶ 2-5.)  As the Ninth Circuit

8    articulated in *Balderas*, evidence that "the [borrowers] signed the document in [the

9    bank's] possession" alone does not fully comply with TILA's requirement of delivering

10   the notices.  664 F.3d at 790 (interpreting "deliver" to mean that borrower is allowed to

11   keep notices).  And Plaintiffs have provided declaration testimony that these materials

12   were not given to them to keep.  (Hoang Decl. ¶¶ 2-5; Nguyen Decl. ¶¶ 2-5).  Due to

13   these conflicting versions of the facts, the court finds that a genuine dispute of material

14   fact exists as to whether Plaintiffs were given copies of the required disclosures.  *See*

15   *Rowland v. Novus Fin. Corp.*, 949 F. Supp. 1447, 1460 (D. Haw. 1996) (denying

16   summary judgment despite signed forms when borrower produced conflicting evidence).

17          Defendants point to out-of-circuit precedent that purportedly rejected an argument

18   like the one Plaintiffs raise here—coined the "envelope theory"—regarding whether the

19   disclosure forms were within the folder of materials given to borrowers.  (Defs. MSJ

20   //

21   MSJ Reply (Dkt. # 65) at 5)—was at the motion to dismiss stage.  664 F.3d at 790-91.

22   Moreover, *Peyton v. Option One Mortgage Corp.*, 684 F. App'x 650 (9th Cir. 2017), was an
     unpublished memorandum decision with no precedential value.  *Id.* at 650; 9th Cir. R. 36-3(a).

1   Reply at 3-4 (citing *Jackson v. New Century Mortg. Corp.*, 320 F. Supp. 2d 608 (E.D.

2   Mich. 2004)).)   In *Jackson*, the borrowers contended that all materials given to them at

3   closing were contained within an envelope, which the borrowers claimed to have sealed

4   and not opened.  320 F. Supp. 2d at 611.  When they did open the envelope, it

5   purportedly contained only unsigned documents.  *Id.*  However, the borrowers also

6   admitted that they received signed documents.  *Id.*  The court reasoned that this

7   contradiction raised "uncertainty of what documents [the borrowers] did receive," and

8   thus, the borrowers failed to rebut the presumption.  *Id.* at 612.

9       *Jackson* is distinguishable from the case here.  As a preliminary matter, the court

10  observes that *Jackson* comes dangerously close to weighing evidence and making

11  credibility determinations that are, of course, prohibited when analyzing a motion for

12  summary judgment.  *See Anderson*, 477 U.S. at 249-50.  Regardless, there is no clear-cut

13  contradiction here.  Indeed, drawing reasonable inferences in the light most favorable to

14  Plaintiffs, unlike the borrowers in *Jackson* who did not inspect the contents of the

15  envelope and thus could not say what was in it, Plaintiffs did inspect their folders and did

16  not find any of the Disclosure Forms.[5]  (*See* Hoang Decl. ¶ 5; Nguyen Decl. ¶ 5); 320 F.

17  Supp. 2d at 612.  Plaintiffs' declarations are supported by the fact that no Disclosure

18  _____

19      [5] In the same vein, the facts here distinguish this case from other circuit court cases relied
    upon by Defendants.  (*See* Defs. MSJ at 9.)  In *Jesinoski v. Countrywide Home Loans, Inc.*, 883
20  F.3d 1010 (8th Cir. 2018), the borrowers did not "claim to have personal knowledge" or "claim
    that they conducted their own inspection" of the materials given to them.  *Id.* at 1013-14.
    Similarly, in *Lee v. Countrywide Home Loans, Inc.*, 692 F.3d 442 (6th Cir. 2012), the borrowers
21  attested only that their folder of materials was "unaltered since closing," not that they had not
    found the required documents in it.  *Id.* at 451-52.  Here, Plaintiffs declare affirmatively,
    pursuant to their personal knowledge, that none of the required documents were in the folders
22  given to them.  (Hoang Decl. ¶ 5; Nguyen Decl. ¶ 5.)

1    Forms were in the materials that Plaintiffs later produced.  (*See* 2d Stastny Decl. (Dkt.

2    # 68) ¶ 3, Ex. A.)  Defendants make much of the fact that Plaintiffs allude to "folders" in

3    their declarations but brought only one "folder" to the deposition.  (*See* Defs. MSJ Reply

4    at 3-4.)  This discrepancy pales in comparison to that in *Jackson* and does not negate

5    Plaintiffs' declaration testimony that none of the disclosure forms were given to them

6    after signing.  To the extent that Defendants are inviting the court to determine the

7    credibility of Plaintiffs' testimony (*see* Defs. MSJ at 10 (describing Plaintiffs' testimony

8    as "unreliable")), the court may not do so at this stage, *see Anderson*, 477 U.S. at 249-50.

9         Defendants further point to out-of-circuit authority to argue that "[c]onclusory,

10   self-serving testimony of non-receipt of required TILA disclosures is not sufficient to

11   rebut the presumption."  (Defs. MSJ at 9 (citing *Keiran v. Home Capital, Inc.*, 858 F.3d

12   1127, 1132-33 (8th Cir. 2017).)  But Ninth Circuit precedent suggests otherwise.  *See*

13   *Balderas*, 664 F.3d at 790.  While discussing how the borrowers may rebut the

14   presumption that their signed acknowledgement created, the Ninth Circuit opined that if

15   the borrowers testified that "they did not, in fact, get a properly prepared notice . . . the

16   trier of fact could believe them, despite their signed statement to the contrary."  *Id.*  This

17   statement, although dicta, suggests that testimony alone could defeat the presumption that

18   a signed acknowledgement created.  *See id.*  Accordingly, the court declines to adopt

19   Defendants' blanket rule that self-serving testimony is insufficient.[6]

20

21        [6] The court observes that some of the circuits Defendants rely upon are split as to this
     issue of self-serving testimony.  (*See* Defs. MSJ at 10.)  For instance, in *Jesinoki*, the Eighth
22   Circuit declined to affirm based simply on the fact that the borrowers' only evidence was
     self-serving affidavits.  883 F.3d at 1014.  Instead, the Eighth Circuit recognized that other cases

1    To be clear, Defendants may challenge the credibility of Plaintiffs' testimony or

2    argue that their self-serving testimony deserves less weight than the documents found in

3    the loan file, but summary judgment is not the time to make such findings. *See id.* at 791

4    ("At trial . . . [t]he trier of fact must then decide whether the evidence is specific and

5    believable enough to rebut the statutory presumption.") (internal citations omitted).

6    Taking the evidence in the light most favorable to Plaintiffs, as the court must at this

7    stage, a reasonable juror could conclude that the required disclosures were not in the

8    materials given to Plaintiffs and thus, Plaintiffs had three years to rescind their loan.

9    Thus, the court denies Defendant's motion for summary judgment on this ground.

10        3.    Ability to Tender

11    When a borrower exercises the right to rescind, he or she must return the money or

12    property that was borrowed. 15 U.S.C. § 1635(b). In applying TILA, the court "ha[s] the

13    discretion to condition rescission on tender by the borrower of the property he had

14    received from the lender." *Yamamoto v. Bank of New York*, 329 F.3d 1167, 1171 (9th

15    Cir. 2003) (quoting *Ljepava v. M.S.L.C. Props., Inc.*, 511 F.2d 935, 944 (9th Cir. 1975))

16    (internal quotation marks omitted). In *Yamamoto*, the Ninth Circuit affirmed the grant of

17    summary judgment to the lender when the borrowers were "unable to provide evidence

18    that they could tender the proceeds." *Id.* at 1168. But when the borrower produces

19    evidence of the ability to repay, courts deny summary judgment. *See Phleger v.*

20    *Countrywide Home Loans, Inc.*, No. C 07-01686 SBA, 2009 WL 537189, at *25 (N.D.

21    _____

22    denied summary judgment based on similar self-serving affidavits and "reject[ed] the parties'
     invitation to parse these cases." *Id.*

Cal. Mar. 3, 2009).  For instance, in *Phleger*, the borrower's real estate worth over $30 million, which could cover the $3.85 million loan, precluded summary judgment.  *Id.*

Defendants question Plaintiffs' ability to tender the amount of $283,784.34, noting that Plaintiffs' last attempted payment failed due to lack of funds; that Mr. Hoang filed bankruptcy in 2015; and that neither Plaintiff's income would support repayment.  (Defs. MSJ at 12-13 (citing Stastny Decl. ¶ 5, Ex. 4; Hoang Dep. at 11:5-12:9; Nguyen Dep. at 7:17-8:4).)  Plaintiffs, in response, submit declaration testimony that they "are willing and have the wherewithal" to tender the loan amount and point to their joint retirement accounts totaling over $700,000.00 in available funds.  (Hoang Decl. ¶¶ 8-11; Nguyen Decl. ¶¶ 6-9.)  Defendants do not dispute Plaintiffs' evidence.  (*See* Defs. MSJ Reply.) Like the borrower in *Phleger*, Plaintiffs have produced evidence that they have enough funds to cover the loan amount.  *See* 2009 WL 537189, at *25.  Thus, the court denies Defendants' motion for summary judgment on the issue of tender.

4.   Preclusion

Lastly, Defendants argue that claim and issue preclusion bar Plaintiffs' claims because Mr. Hoang filed suit over the same loan in 2013.  (Defs. MSJ at 13-16.)  The court concludes that neither doctrine applies here.

Claim preclusion bars litigation of claims that were raised or could have been raised in a previous lawsuit.  *Stewart v. U.S. Bancorp*, 297 F.3d 953, 956 (9th Cir. 2002). Claim preclusion requires that the previous lawsuit issued a final judgment on the merits. *See Headwaters Inc. v. U.S. Forest Serv.*, 399 F.3d 1047, 1052 (9th Cir. 2005).  "A dismissal without prejudice is not a final adjudication on the merits."  *Mt. St. Helens Min.*

1    *& Recovery Ltd. P'ship v. United States.*, 177 F. Supp. 2d 1143, 1148 (W.D. Wash.

2    2001).  Here, Judge Coughenour dismissed Mr. Hoang's 2013 lawsuit without prejudice.

3    *Hoang*, 2013 WL 12075009, at *5.  Defendants make no argument as to why claim

4    preclusion applies where, as here, the previous lawsuit ended in a dismissal without

5    prejudice.  (*See* Defs. MSJ; Defs. MSJ Reply.)  Thus, the court rejects Defendants'

6    argument that Plaintiffs' present suit is barred by claim preclusion.

7          Issue preclusion bars "successive litigation of an issue of fact or law actually

8    litigated and resolved in a valid court determination essential to the prior judgment."

9    *New Hampshire v. Maine*, 532 U.S. 742, 748-49 (2001).  Issue preclusion does not apply

10   to "issues that could have been raised [in the previous lawsuit], but were not."  *Janjua v.*

11   *Neufeld*, 933 F.3d 1061, 1065 (9th Cir. 2019).  Mr. Hoang did not raise the issue of TILA

12   rescission in the previous lawsuit.  *See generally Hoang*, 2013 WL 12075009, at *3-5.

13   Again, Defendants offer no reason why issue preclusion applies here when Mr. Hoang

14   did not raise TILA rescission claims in the previous suit, arguing only that "the analysis

15   is essentially the same as for claim preclusion."  (*See* Defs. MSJ at 16.)  But a critical

16   difference between claim and issue preclusion is that issue preclusion only applies to

17   issues that were actually litigated.  *Janjua*, 933 F.3d at 1065 ("Unlike claim preclusion

18   . . . issue preclusion requires that an issue must have been 'actually and necessarily

19   determined.'") (quoting *Montana v. United States*, 440 U.S. 147, 153 (1979)).  Thus, the

20   court concludes that issue preclusion does not apply here.[7]

21   _____

22         [7] Defendants contend that "the preclusive effect of an earlier federal diversity judgment is
     determined under state law."  (Defs. MSJ at 13 (citing *Pardo v. Olson & Sons, Inc.*, 40 F.3d

1    In sum, the court grants summary judgment to MERS, as it is not a "creditor"

2  under TILA.  However, the court denies summary judgment on Defendants' remaining

3  arguments.  A genuine issue of material fact precludes summary judgment on whether

4  Defendants delivered the required TILA disclosures and whether Plaintiffs can tender the

5  loan amount.  Lastly, preclusion doctrines do not bar the present suit.

6                        IV.        CONCLUSION

7    Based on the foregoing reasons, the court GRANTS Plaintiffs' motion to amend

8  (Dkt. # 51) and authorizes Plaintiffs to file their amended complaint in the form attached

9  as Exhibit 1 to the motion (Dkt. # 51-1) within four (4) days of the entry of the order.

10  The court additionally DENIES Plaintiffs' motion for summary judgment (Dkt. # 55) and

11  GRANTS summary judgment to Defendants on that issue.  The court GRANTS in part

12  and DENIES in part Defendants' motion for summary judgment (Dkt. # 46).

13  Specifically, the court grants summary judgment to MERS on the TILA rescission claims

14  but denies the remainder of Defendants' motion.

15    Dated this 17th day of February, 2021.

16

17

18                                          JAMES L. ROBART
                                            United States District Judge

19
_____

20  1063, 1066 (9th Cir. 1994).)  But *Pardo* explains that "Washington applies federal law to
determine the preclusive effect of a prior federal judgment."  40 F.3d at 1066.  Even if state law
applied, the court's conclusions remain the same.  *See Bates v. Drake*, 68 P. 961, 964 (Wash.
1902) ("It is, perhaps, needless to add that a judgment of dismissal of an action without prejudice

21  is not a bar to another action between the same parties for the same cause of action."); *Ullery v.
Fulleton*, 256 P.3d 406, 413 (Wash. Ct. App. 2011) (noting that issue preclusion bars only issues

22  that were actually litigated).

ORDER - 22