Scott E. Stafne
Stafne Law Advocacy & Consulting
239 N. Olympic Ave.
Arlington, WA 98223
360.403.8700
Scott@Stafnelaw.com
*Counsel for Plaintiffs*
Jerry Hoang and Le Uyen Thi Nguyen

## United States District Court In and For The Western District of Washington

| | |
|---|---|
| Jerry Hoang et al.,<br><br>Plaintiffs,<br><br>v.<br><br>Bank of America, N.A. et al.,<br><br>Defendants. | Case No.: 2:17-cv-00874-JLR<br>Honorable James L. Robart<br><br>**Amended Verified Complaint for Declaratory Judgement and to Enforce Recission Under TILA and Washington's Tender Laws, RCW 62A.3-603 (a), (b), and (c)**<br><br>**Jury Demand** |

Plaintiffs, Hoang and Le Uyen Thi Nguyen (Plaintiffs) complain against all Defendants as follows:

## I. Introduction

1.1.    This action is to declare the consequences of Plaintiffs' rescission of their home loan under the Truth in Lending Act (TILA), 15 U.S.C. 1601, *et seq*; specifically, 15 U.S.C. § 1635 and 12 CFR § 1206 as an event which has already occurred under the Supreme Court's unanimous decision in *Jesinoski v. Countrywide Home Loans,* Inc., 574 U.S. 259, 135 S. Ct. 790, 190 L.Ed.2d 650 (2015). Further, to declare that Defendants cannot seek a judicial undoing of this rescission years after it has occurred as a means of avoiding the remedy the political branches intended to provide borrowers and society generally, including specifically Plaintiffs, for the banking

Amended Verified Complaint
Page 1

Stafne Law *Advocacy & Consulting*
239 N. Olympic Ave.
Arlington, WA 98223
360.403.8700

industries past bad practices.

1.2.    This complaint requests a declaratory judgment that judicial officer James L. Robart is not qualified to act as an Article III judge exercising the judicial power of the Federal District Court for the Western District of Washington, a court within the Judicial Department of the United States (which is one of the three branches of the federal government) without the consent of the parties.

1.3.    Additionally, this complaint requests declaratory relief that lower federal courts are required to resolve cases based on the presentation of the parties in accordance with the precedential rulings of the Supreme Court (in this case *Jesinowski, supra.*), by following the laws enacted by the political branches of both the federal government and Washington's government.

1.4.    Additionally, this complaint seeks that legal and/or equitable relief which is set forth in the Prayer for Relief section of this Amended Complaint.

1.5.    Additionally, this complaint seeks that legal and/or equitable relief which is set forth in the Prayer for Relief section of this Amended Complaint.

## II. PARTIES

2.1.    Plaintiffs are citizens of the State of Washington and bring this action to declare the effect of their TILA rescission under the facts of this case. Plaintiffs Hoang and Nyguen are natural persons who at all times relevant to this amended complaint have been the fee simple owners of the real property located at 13522 43rd Avenue, South Tukwila, WA. 98168, parcel ID # 261320015606, having the legal description of:

> Lot 3, City of Tukwila Short Plat L1-033
> Recorded Under Recording No. 20040212900003,
> In King County, Washington

2.2.    Defendant Bank of America N.A. (hereafter referred to individually as BANA) is a national bank organized and existing under the laws of the United States with its headquarters and principal place of business located at 101 South Tryon St., North Carolina, 29202.

STAFNE LAW *Advocacy & Consulting*
239 N. Olympic Ave.
Arlington, WA 98223
360.403.8700

2.3.   BANA was the original Lender and Servicer of this loan. Because BANA recorded in King County land records that its purported interests in that loan had been transferred to Defendant BAC Home Loans Servicing (BAC) it is not clear what, if any, interests BANA had in the Plaintiffs' home loan at the time it received Plaintiffs' notice of rescission.

2.4.   Plaintiffs do not know, and for that reason dispute that BANA continues to be the servicer of their loan for purposes of enforcing the note and foreclosing on their property pursuant to the standing requirements of Article III to the United States Constitution. Furthermore, Plaintiffs also assert that BANA can have no interest in the security agreement which has been voided as a matter of law by TILA and its implementing regulations.

2.5.   Defendant, Federal National Mortgage Association (hereafter referred to individually as "Fannie Mae") is a federally chartered corporation organized and existing under the laws of the United States with its headquarters and principal place of business located at 13100 Worldgate Drive, Herndon, Virginia 20170. Plaintiffs understand that Fannie Mae claims to have been the past owner of Plaintiffs' home loan, loan number #220344064, at the time the rescission described herein was accomplished.

2.6.   Plaintiffs do not know, and for that reason dispute that Fannie Mae continues to be the owner of their note instrument for purposes of enforcing the note and foreclosing on their property pursuant to the standing requirements of Article III to the United States Constitution.

2.7.   Plaintiffs are not sure whether Defendant Mortgage Electronic Registration System (hereafter referred to individually as "MERS") continues to exist.[1]

2.8.   In a recent corporate disclosure statement filed by MERS in *Luong v. Mortgage Electronic Registration Systems Inc (MERS) et al.*, 2:2019cv01923 (RSM) MERS' purported attorneys state:

> Pursuant to Fed. R. Civ. P. 7.1(a), Defendant Mortgage Electronic Registration Systems Inc. ("MERS"), by and through its attorneys of record, hereby certifies as

---

[1] *See e.g.,* Wikipedia at: https://en.wikipedia.org/wiki/Mortgage_Electronic_Registration_Systems

Stafne Law *Advocacy & Consulting*
239 N. Olympic Ave.
Arlington, WA 98223
360.403.8700

follows: MERS is a non-governmental corporation organized and existing under the laws of the State of Delaware, with its principal place of business in Reston, Virginia.

2.9.    In any event MERS citizenship has nothing to do with this Court's jurisdiction to adjudicate Plaintiffs' case declaring and/or determining the effect of Plaintiffs undisputed rescission because subject-matter jurisdiction is appropriate in this Court pursuant to this Court's Federal Question subject-matter jurisdiction. *See* 28 U.S.C. § 1331.

2.10.   Defendant MERS is named as the beneficiary of Plaintiffs' deed of trust security instrument. Defendant MERS is also named therein as the owner of that security instrument.[2]

> Mortgage Electronic Registration Systems, Inc. . . . . is the owner of record (or the owner's nominee) of the security interest arising from mortgages extended by lenders, investors and their loan servicers and recorded in county land records.

The issue of the ownership of the various MERS entities in the MERS system "is blurred between the entities to the point that courts tend to confuse the eRegistry system with the nominee because they use the same 'MERS' acronym. Thus, for purposes of this lawsuit Plaintiffs allege that as per the language of the Deed of Trust MERS is the owner of the deed of trust security instrument and the parties to that security agreement agreed that MERS would be the beneficiary of that loan.

2.11.   Plaintiffs dispute that MERS was actually the "beneficiary" of their loan under Washington's Deeds of Trust Act, Ch. 61.24 RCW (DTA) as a matter of law based on *Bain v. Metro. Mortg. Grp., Inc.* 175 Wn.2d 83, 285 P. 3d 34 (2012) which held MERS cannot be a beneficiary of the deed of trust security instrument pursuant to Washington's DTA unless MERS owns and holds both the note and deed of trust security instrument or such a result is accomplished by way of MERS agency with the Lender.

2.12.   Notwithstanding MERS was not the beneficiary of Plaintiffs' mortgage agreements, *i.e.*, the promissory note and deed of trust security instrument, MERS purported

---

[2] *See also* Wikipedia, at https://en.wikipedia.org/wiki/Mortgage_Electronic_Registration_Systems

Amended Verified Complaint
Page 4

Stafne Law *Advocacy & Consulting*
239 N. Olympic Ave.
Arlington, WA 98223
360.403.8700

to assign its interest in the deed of trust security instrument together with the note from itself or BANA and itself to defendant BAC Home Loans Servicing (hereinafter referred to as "BAC") on July 13, 2011. *See* Exhibit 1, attached hereto.

2.13. If that assignment was valid (and BANA appears to assert that it was) then BAC may also have had rights in Plaintiffs' home mortgage loan. As previously stated, Exhibit 1 assigns all of MERS' interests in the deed of trust and note to Defendant BAC on July 13, 2011.

2.14. Plaintiffs do not know, and for that reason dispute that BAC continues to have any interest in their loan for purposes of enforcing the note and foreclosing on their property pursuant to the standing requirements of Article III to the United States Constitution.

### III. Jurisdiction and Venue

3.1.   Plaintiffs originally filed their complaint against the four defendants named herein in a Washington State Court. Plaintiffs have attached a true and correct copy of that complaint hereto as Exhibit 2. Exhibit 2 differs substantially from the complaint Defendants improperly filed with this Court as part of the removal process because that complaint does not include the exhibits attached to the actual complaint. *See* ECF 1. Plaintiffs allege the failure to provide an accurate copy of their complaint to this Court constitutes a type of spoliation of evidence and was intentional.

3.2.   This case was originally removed from the Superior Court of King County, Washington to this Court "based on 28 U.S.C. § 1332 (diversity jurisdiction) [as] . . . authorized by 28 U.S.C. §§ 1441 and 1446" on June 7, 2017, without consideration of MERS and BAC as Defendants in the notice of removal. *See* ECF 1.

3.3.   A day after the notice of removal, on June 8, 2017, Senior Judge Robart (hereinafter referred to as judicial officer Robart) notified Defendants BANA and Fannie Mae that they must file Corporate Disclosure Statements by June 15, 2017. *See* Docket, Order dated June 8, 2017.

Amended Verified Complaint
Page 5

Stafne Law *Advocacy & Consulting*
239 N. Olympic Ave.
Arlington, WA 98223
360.403.8700

3.4.   On June 14, 2017, before this Court and judicial officer Robart had determined this Court had subject-matter jurisdiction, Defendants BANA and Fannie Mae filed a motion to dismiss Plaintiffs' complaint for failure to state a claim pursuant to FRCP 12(b)(6). *See* ECF 4. Plaintiffs assert the filing of a motion to dismiss prior to a determination of whether this Court had subject-matter jurisdiction to adjudicate the merits was improper.

3.5.   On June 21, 2017, judicial officer Robart sua sponte questioned this Court's subject-matter jurisdiction over the complaint based on 28 U.S.C. § 1332, *See* Order to Show Cause, ECF 7, and ordered the parties to respond to his concerns.

3.6.   On July 6, 2017, Defendants BANA and Fannie Mae responded that this Court had subject-matter jurisdiction under 28 U.S.C. 1332 because "complete diversity exists as MERS and BAC are not defendants in this matter." BANA and Fannie Mae also argued: "[a]s this Court noted, Plaintiffs also assert a federal claim (*see* Compl., ¶¶ 1.1, 4.4, 5.1–5.9) under the Truth-in-Lending Act, 15 U.S.C. § 1601, et. seq., § 1635. Therefore, federal question jurisdiction also exists under 28 U.S.C. § 1331, 1441(a)."

3.7.   Plaintiffs allege that judicial officer Robart's assertion that subject-matter jurisdiction appeared appropriate pursuant to 28 U.S.C. §1331, notwithstanding the notice of removal filed by Defendants BANA and Fannie Mae relied upon 28 U.S.C. 1332, violated the constitutional principle of "party presentation" as articulated by the United States Supreme Court in *United States v. Sineneng-Smith*, 140 S.Ct. 1575, 1579 (2020) where a unanimous court stated: "In our adversarial system of adjudication, we follow the principle of party presentation. '[I]n both civil and criminal cases, in the first instance and on appeal . . . , we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.'" *See also Greenlaw v. United States*, 554 U.S. 237, 128 S. Ct. 2559 (2008); *Wood v. Milyard*, 566 U.S. 463, 132

Amended Verified Complaint
Page 6

Stafne Law *Advocacy & Consulting*
239 N. Olympic Ave.
Arlington, WA 98223
360.403.8700

S. Ct. 1826 (2012)[3].

3.8.   Further, Plaintiffs allege that judicial officer Robart acting as an Article III judge without first obtaining the consent of the parties to do so, coupled with his providing advice to Defendants BANA and Fannie Mae as to how those Defendants should assert subject-matter jurisdiction in violation of the principle of party presentation and with regard to his failure to address the limitations issues actually raised by the parties, requires recusal because objectively speaking the probability of actual bias on the part of a judicial officer helping one party at the expense of another is too high to be constitutionally tolerable under the Supreme Court's objective Due Process precedents. *See e.g., Rippo v. Baker*, 137 S. Ct. 905, 907 (2017), citing *Withrow v. Larkin*, 421 U.S. 35, 47, 95 S. Ct. 1456 (1975). *See also Williams v. Pennsylvania*, 579 U.S. ____, ____, 136 S. Ct. 1899, 1905, 195 L.Ed.2d 132 (2016) ("The Court asks not whether a judge harbors an actual, subjective bias, but instead whether, as an objective matter, the average judge in his position is likely to be neutral, or whether there is an unconstitutional potential for bias" (internal quotation marks omitted))

3.9.   Without ever ruling on the subject-matter jurisdiction issues raised in his order to show cause, judicial officer Robart ruled on the FRCP 12(b)(6) motion brought by Defendants BANA and Fannie Mae. In so ruling, this District Court, through judicial officer Robart, acknowledged that there was a split of authority in the Ninth Circuit at that time as to whether any statute of limitations should apply to such a recission. *Hoang v. Bank of Am., N.A.*, No. C17-0874JLR, 2017 U.S. Dist. LEXIS 190088, at *10–11 (W.D. Wash. Nov. 16, 2017).

3.10. This District Court, through judicial officer Robart held that TILA's one-year

---

[3] Plaintiffs acknowledge that the principal of party presentation may not apply as rigorously to subject-matter jurisdiction as it does to other legal matters. See e.g. FRCP 12(h)(3). However, they still challenge the appropriateness of a neutral arbiter providing their adversary with legal advice from the bench.

Stafne Law *Advocacy & Consulting*
239 N. Olympic Ave.
Arlington, WA 98223
360.403.8700

statute of limitations for damage actions, which no party urged should be applied[4], was applicable to Hoang's lawsuit for declaratory relief notwithstanding TILA does not establish any limitations period in which creditors are allowed to challenge a completed rescission. While TILA does allow for judicial oversight of the rescission process if a party timely requests this, Defendants have not timely requested such relief.

3.11.   This Court specifically rejected the contention, later adopted by the Ninth Circuit, that Washington's six-year statute of limitations applicable to contracts was the appropriate limitations period. In this regard, this court states in its opinion: "[t]his court declines to apply the most closely analogous Washington State limitations period, the six-year limitations period for contract actions, RCW 4.16.040, because TILA's § 1640 provides a much closer limitations period to a borrower's § 1635 claim." *Id.* at **23–24.)

3.12.   On appeal to the Ninth Circuit, the reviewing Panel rejected this Court's statute of limitations analysis. The Ninth Circuit stated:

> Applying Washington's six-year contract statute of limitations, Hoang's TILA claim is timely. Hoang's cause of action arose in May 2013 when the Bank failed to take any action to wind up the loan within 20 days of receiving Hoang's notice of rescission[5]. *See* 15 U.S.C. § 1635(b). Because Hoang brought this suit within six years, the district court erred in dismissing the claim as time barred.

3.13.   The Ninth Circuit Court of Appeals also violated the principle of party presentation referenced above because that Court failed to decide this case based on the contentions of the parties. Plaintiffs were asserting that because the event of rescission was complete with notification—unless challenged in 20 days—the only thing left to do

---

[4] Judicial officer Robart based his decision in this regard on a statute of limitations analysis that no party urged and that was rejected by the Ninth Circuit Court of Appeals. Plaintiffs assert judicial officer Robart's ruling in this regard also violated the principle of party representation that is supposed to help ensure the fairness of our adversary system of justice.

[5] The Ninth Circuit Panel held that the complaint was not clear about when Bank of America actually received the notice of rescission or when the 20-day period under 15 U.S.C. 1635 (b) would have run. *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096, 1102 n.5 (9th Cir. 2018).

Stafne Law *Advocacy & Consulting*
239 N. Olympic Ave.
Arlington, WA 98223
360.403.8700

was wind up the mortgage loan unless some other grounds for post judgment relief was available pursuant to the Federal Rules of Civil Procedure. Plaintiffs re-assert that legal contention here.

3.14.   Notwithstanding the Ninth Circuit Court of Appeals may have violated the principle of party presentation, its decision (including the Panel's underlying reasoning) in *Hoang v. Bank of Am., N.A.*, 910 F.3d 1096 (9th Cir. 2018) may be binding on this District Court under "both the law-of-the-case doctrine and our law-of-the-circuit rules"); *California v. U.S. HHS*, 941 F.3d 410, 421 (9th Cir. 2019); *see also Rocky Mountain Farmers Union v. Corey*, 913 F.3d 940, 951 (9th Cir. 2019) ("[L]aw of the case doctrine generally precludes reconsideration of an issue that has already been decided by the same court, or a higher court in the identical case"); *Miranda v. Selig*, 860 F.3d 1237, 1243 (9th Cir. 2017) ("[U]nder the law-of-the-circuit rule, we are bound by decisions of prior panels[] unless an en banc decision, Supreme Court decision, or subsequent legislation undermines those decisions" (internal quotation marks and alterations omitted)). Plaintiffs originally made, *i.e.* that the rescission was legally effective by operation of law 20 days after Defendants received notice of it, and cannot be challenged now. Further Plaintiffs respond that to the extent Defendants claim the appropriate disclosures were accomplished, this is not true.

3.15.   In this case it is Plaintiffs' position that the Ninth Circuit misapplied *Jesinowski* in holding that Defendants can litigate whether a TILA rescission occurred after the rescission, which was not timely challenged, became effective as a matter of law.

## IV. Facts

4.1.   Plaintiffs reallege those facts previously set forth herein.

4.2.   On December 21, 2004, Plaintiffs purchased their residence with a home loan from Wells Fargo Bank. This home is located at 13522 43rd Ave. S. Tukwila, WA 98168. *See* Warranty Deed, attached hereto as Exhibit 3.

Stafne Law *Advocacy & Consulting*
239 N. Olympic Ave.
Arlington, WA 98223
360.403.8700

4.3.   On April 30, 2010, Plaintiffs refinanced their home loan with Bank of America, N.A. No party has ever disputed that Plaintiffs' are within the zone of interests that TILA is intended to protect.

4.4.   At the closing Plaintiffs executed the Note and the Deed of Trust security instrument attached hereto as Exhibit 4 and Exhibit 5 respectively.

4.5.   Defendants did not provide the Hoangs any notice of their right to rescind the loan pursuant to TILA at the closing on April 30, 2010. *See* Declaration of Jerry Hoang to this effect. *See* Exhibit 6 hereto. *See* also Exhibit D to Exhibit 2.

4.6.   Regulation Z provides that if a creditor fails to deliver the required disclosures, "the right to rescind shall expire three years after consummation, upon transfer of all of the consumer', interest in the property, or upon sale of the property, whichever occurs first." 12 C.F.R. 226 23(a)(3); *see* 12 C.F.R 1026.23(a)(3).

4.7.   On April 15, 2013, (less than three years after the loan consummation) Plaintiffs sent a "Notice of Rescission/Cancellation" to Defendants. A copy of that Notice of Rescission is attached Exhibit 7 hereto. Under the law the rescission was effective upon mailing. Alternatively, the notice of rescission was effective upon receipt.

4.8.   Defendants do not dispute that they received these notices and intentionally chose not to respond to them.

4.9.   The United States Postal Service has confirmed the dates that each of the Defendants received Plaintiffs' rescission of the loan agreement. *See* copies of U.S. MAIL proof of service on each of the Defendants. These are attached hereto as Exhibit 8 hereto.

4.10.   Defendant Bank of America (BANA) received the notice of rescission on April 19, 2019, and thus the rescission became effective that day as to BANA because BANA did not respond to the rescission within 20 days of its receipt.

4.11.   Fannie Mae received the notice of rescission on April 18, 2013, and thus the rescission became effective that day as to Fannie Mae because Fannie Mae did not respond to

STAFNE LAW *Advocacy & Consulting*
239 N. Olympic Ave.
Arlington, WA 98223
360.403.8700

the rescission within 20 days of its receipt.

4.12. MERS received the notice of rescission on April 17, 2013, and thus the rescission became effective that day as to MERS because MERS did not respond to the rescission within 20 days of its receipt.

4.13. BAC received the notice of rescission on April 18, 2013, and thus the rescission became effective that day as to BAC because BAC did not respond to the rescission within 20 days of its receipt.

4.14. A copy of this Notice of Rescission was also recorded in the King County Recording Office as document #20150813000493 on August 13, 2015. A copy of that Recorded Notice of Rescission is attached hereto as Exhibit 9.

4.15. At the time the rescission was made Plaintiffs intended (and had the financial ability) to return all the money they had borrowed together with interest up until the time their rescission became effective. They were also prepared to leave their home.

4.16. Plaintiffs are still able to and willing to return all the money legally owed to defendants (or any one of them that can identify they still have an interest in the loan) as of the date of rescission. Further, they are willing now to consider paying the principal and interest up to the time of the event rescission occurred to any one of the defendants who agrees to hold Plaintiffs harmless with regard to any damages this might cause them in the future.

4.17. Since this case was remanded back to this Court by the Court of Appeals on December 6, 2018, Plaintiffs have consistently attempted to settle this matter based on the event of rescission being effective when Defendants were notified of it as per the unanimous decision of the Supreme Court in *Jesinoski v. Countrywide Home Loans, Inc.*, 574 U.S. 259, 262, 135 S. Ct. 790, 792, 190 L.Ed.2d 650, 654 (2015). ("Section 1635(a) explains in unequivocal terms how the right to rescind is to be exercised: It provides that a borrower "shall have the right to rescind . . . by notifying the creditor, in accordance with

STAFNE LAW *Advocacy & Consulting*
239 N. Olympic Ave.
Arlington, WA 98223
360.403.8700

regulations of the Board, of his intention to do so" (emphasis added). The language leaves no doubt that rescission is effected when the borrower notifies the creditor of his intention to rescind." *Id.* at 262).

4.18.  Defendants refusal to engage in settlement discussions the entire time this case has been remanded back to this Court based on the completed rescission has been in bad faith and has been prejudicial to Plaintiffs because they cannot get this matter resolved in the way Congress mandated that it should be. *See Jesinoski, supra*. It is also prejudicial because Defendants are refusing to comply with Washington's Tender of Payment statute set forth at 62A.3-603 and in such other ways as will be proved at trial.

4.19.  Defendants purposely failed to respond to the notice of rescission in any way so as to frustrate the purposes of the Truth in Lending Act. *See e.g.,* Alaqili, Saif "Striking a Balance: How Equitable Doctrine Restores the Purposes of TILA's Rescission Right," University of Chicago Legal Forum: Vol. 2013: Iss. 1, Article 19, pp. 737-9.[6] Defendants purposely did not take timely steps to rescind the loan or to challenge the validity of the Rescission Notice within 20 days as is required by TILA, and Regulation Z (15 U.S.C. U.S.C. § l635(b); 12 C.F.R. § 1026.23(d)(2)) and therefore forfeited, waived, and/or are estopped from challenging that rescission years after the fact in the same way as they would not be able to challenge a default judgment years after it was granted.

4.20.  Plaintiffs allege that the principles of res judicata and collateral estoppel bar Defendants (each and all of them) from asserting that the Plaintiffs rescission of the loan is not effective and binding on them and their successors.

4.21.  A void deed of trust security cannot be enforced by way of a nonjudicial or judicial foreclosure under Washington law.

4.22.  The nonjudicial foreclosure of Plaintiffs property that precipitated the filing of this action was initiated by Defendant BANA through Quality Loan Services Corporation of

---

[6] Last accessed on December 17, 2020 at: https://chicagounbound.uchicago.edu/cgi/viewcontent.cgi?article=1525&context=uclf

STAFNE LAW *Advocacy & Consulting*
239 N. Olympic Ave.
Arlington, WA 98223
360.403.8700

Washington (an alleged successor trustee) in February 2017. *See* Attached Exhibit G. (Notice of Default). That nonjudicial foreclosure is no longer pending, but Plaintiffs have a reasonable fear that if this rescission matter is not resolved Defendants or some other entities will likely attempt to foreclose upon them again based on this void deed of trust security instrument.

## V. Causes of Action

### 5. Declaratory Judgment

5.1.   Plaintiffs incorporate by reference the previous allegations contained herein.

5.2.   Defendants claim they can judicially challenge the effectiveness of Plaintiffs' rescission now—years after it became effective after the 20-day period of time Defendants were given to challenge it.

5.3.   As a result of this contention by Defendants and the facts previously set forth herein a case or controversy within the meaning of Article III exists between the parties with regard to Plaintiffs' rights under the Separation of Powers to

A)  have this case adjudicated by an Article III judge who has life tenure; And on that basis to have judicial officer Robert disqualified because Plaintiffs have not consented to his adjudication of this case. *See e.g., Wellness Int'l Network, Ltd. v. Sharif,* 575 U.S. 665, 135 S. Ct. 1932 (2015).

B)  have a fair trial of this case by a fair tribunal within the meaning the objective Due Process precedents established by the United States Supreme Court; And on this basis to have judicial officer Robart disqualified based on *Rippo v. Baker*, 137 S. Ct. 905, 907 (2017); *Williams v. Pennsylvania*, 579 U.S. ----, ----, 136 S. Ct. 1899, 1905, 195 L.Ed.2d 132 (2016); *Withrow v. Larkin,* 421 U.S. 35, 47, 95 S. Ct. 1456(1975).

C)  have this case adjudicated based on the arguments made by the parties not on the  arguments  made  by  judicial  officers  that  the  parties  were  not  given  an

appropriate opportunity to respond to;

And on this basis to have this case between the parties adjudicated based on the parties arguments as is required by the constitutional principal that our system of justice allows the parties to represent themselves.

D)  have this case adjudicated based on a reasonable analysis of precedent established by the United States Supreme Court decision in *Jesinowski*.

5.4.  Plaintiffs seek a declaratory judgment that *Jesinowski* and its interpretation of TILA do not require that consumers must bring a lawsuit against creditors to effect a rescission of the mortgage loan under TILA because Congress intended a TILA rescission to be effective without judicial intervention.

5.5.  Plaintiffs seek a declaratory judgment that once the Defendant creditors in this case, *i.e.,* BANA, Fannie Mae, MERS, and BAC, received Plaintiffs' notice of the TILA rescission, each of them were required to take whatever steps each needed to take to unwind the loan agreement or dispute the rescission as to them by filing a legal action to challenge rescission on those grounds that are untimely asserting here years after the rescission occurred. Thus, Plaintiffs seek a declaratory judgment that:

A)  Defendant BANA waived its right to dispute the rescission 20 days after April 19, 2013, when the notice of rescission was received by it, by defaulting on its opportunity to dispute the rescission;

B)  Defendant Fannie Mae waived its right to dispute the rescission 20 days after April 19, 2013, when the notice of rescission was received by it, by defaulting on its opportunity to dispute the rescission;

C)  Defendant MERS waived its right to dispute the rescission 20 days after April 17, 2013, when the notice of rescission was received by it, by defaulting on its opportunity to dispute the rescission;

D)  Defendant BAC waived its right to dispute the rescission 20 days after April 18,

Amended Verified Complaint
Page 14

Stafne Law *Advocacy & Consulting*
239 N. Olympic Ave.
Arlington, WA 98223
360.403.8700

2013, when the notice of rescission was received by it, by defaulting on its opportunity to dispute the rescission;

5.6.    Plaintiffs seek a declaratory judgment that once the Plaintiffs rescinded their loan within the time limitations set by Congress, and defendant creditors chose to not timely dispute this rescission:

A)  The Plaintiffs were not liable for any further finance charges or other charges, and any security interest given by them became void upon the rescission. 15 U .S.C. § 1635(b).

B)  The Defendants were required to begin unwinding the rescinded loan transaction by returning to Plaintiffs any money or property given as earnest money, down payment or otherwise, and to take any action necessary or appropriate to reflect termination of any security interest created under the transaction. *Ibid.*

C)  Plaintiffs were required to tender any property the creditor had previously delivered (or its reasonable value). *Ibid.*

5.7.    Plaintiffs seek a declaratory judgment based on the evidence before this Court that Defendants intentionally refused to comply with its obligation under TILA.

5.8.    Plaintiffs seek a declaratory judgement that Defendants have failed to comply with RCW 62A.3-603 by refusing to accept what Plaintiffs owe them under Washington law. This statute provides:

(a)  If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument, the effect of tender is governed by principles of law applicable to tender of payment under a simple contract.

(b)  If tender of payment of an obligation to pay an instrument is made to a person entitled to enforce the instrument and the tender is refused, there is discharge, to the extent of the amount of the tender, of the obligation of an indorser or accommodation party having a right of recourse with respect to the obligation to which the tender relates.

(c)  If tender of payment of an amount due on an instrument is made to a person entitled to enforce the instrument, the obligation of the obligor to pay

STAFNE LAW *Advocacy & Consulting*
239 N. Olympic Ave.
Arlington, WA 98223
360.403.8700

interest after the due date on the amount tendered is discharged. If present-
ment is required with respect to an instrument and the obligor is able and
ready to pay on the due date at every place of payment stated in the instru-
ment, the obligor is deemed to have made tender of payment on the due date
to the person entitled to enforce the instrument.

## 6. Enforcement of Laws

6.1. Plaintiffs incorporate by reference the previous allegations of this complaint.

6.2. To the extent that a declaratory judgement declaring the rights of Plaintiffs pursu-
ant to the United States Constitution, TILA and its regulations, and RCW 62A.3-603
may not be appropriate then Plaintiffs seek enforcement of their rights based on the facts
alleged in this Amended Complaint.

## 7. Consumer Protection Act, Ch. 19.16 RCW

7.1. Plaintiffs reallege all previous allegations stated herein.

7.2. To prevail on a CPA action, the plaintiff must prove (A) an unfair or deceptive or illegal
act or practice; (B) occurring in trade or commerce; (C) which impacts the public interest; (D)
and proximately causes (E) injury to the plaintiff in his or her business or property.

7.3. Defendants have engaged in one or more of the following unfair, deceptive, and/or illegal
practices:

(a) Attempting to foreclose on a deed of trust security instrument which has been voided
by federal law;

(b) Attempting to collect monies that are not owed to them after the mortgage loan was
rescinded; and

(c) Engaging in abusive litigation and business tactics that are designed to prevent Plain-
tiffs from obtaining the remedy Congress intended to afford them under TILA.

7.4. The unfair and deceptive practices referred to above occurred in the trade or business of
each of the Defendants.

7.5. The unfair and deceptive practices described above affect the public interest for the rea-
sons set forth in RCW 19.16.093 (1)(2) and (3).

Amended Verified Complaint
Page 16

Stafne Law *Advocacy & Consulting*
239 N. Olympic Ave.
Arlington, WA 98223
360.403.8700

7.6.   The foregoing unfair and deceptive practices (and those which will be proved at trial) affecting the public interest have proximately caused Plaintiffs injuries in their business and property, including without limitation:

(a)  Costs associated with rescinding the loan transaction, including among other things costs of preparation and certified mailing rescission notices to each defendant; and

(b)  such other economic harm as will be proved at trial.

## VIII. Prayer For Relief

8.1.   Plaintiffs incorporate by reference the previous allegations contained herein.

WHEREFORE, Plaintiffs pray for declaratory relief and/or relief pursuant to enforcement of the constitutional and statutory provisions set forth herein as follows:

1.  Recusal of judicial officer Robart under the Separation of Powers structure of our government based on his lack of lifetime tenure and/or inability to provide a fair forum by a fair tribunal within the objective precedents of the Due Process Clause of the Fifth Amendment.

2.  Declare that under Article III and the principle of Party Presentation lower federal courts must comply with the provisions of TILA as it has been construed by precedent established by the United States Supreme Court.

3.  Declare that Plaintiffs rescinded their mortgage loan, *i.e.,* both note and deed of trust, as to all Defendants in April, 2013 and that such rescission voided their deed of trust security agreement as a matter of law.

4.  Declare the monetary amount, subject to any recoupment, to which Defendants (or any one of them) are entitled to wind up the rescission of the refinancing loan as per TILA and Washington state law.

5.  Declare Defendants are precluded from seeking foreclosure against the Plaintiff's property.

6.  Enter such Orders necessary, as the court deems appropriate.

Stafne Law *Advocacy & Consulting*
239 N. Olympic Ave.
Arlington, WA 98223
360.403.8700

7.  Demand Defendants bear the expense of Attorney fees and costs for this litigation.

8.  Permit court in its discretion and by the Consumer Protection Act to include up to triple damages caused by Defendants assertion of a lien against the property or claim against Plaintiffs.

9.  For damages, statutory treble damages, and attorney fees for Defendants' violations of the Consumer Production Act.

10.  For all such other relief as may be legally and equitably justified under the circumstances of this case.

DATED this 17th day of December 2020,

By: $S \in S\!\!\!\!\!\diagdown$
    Scott E. Stafne WSBA No. 6964
STAFNE LAW *Advocacy & Consulting*
239 N. Olympic Ave.
Arlington, WA 98223
360.403.8700
Scott@stafnelaw.com

### Verification

We, Jerry Hoang and Le Uyen Thi Nguyen, are the Plaintiffs in the above-entitled action. We have read the forgoing Amended Verified Complaint for Declaratory Judgement and to Enforce Recission Under TILA and Washington's Tender Laws, RCW 62A.3-603 (a), (b), and (c), and know the contents thereof. The same is true of our own knowledge, except as to those matters which are therein alleged on information and belief, and as to those matters, we believe it to be true.

We declare under penalty of perjury that the foregoing is true and correct and that this declaration was executed at Tukwila, Washington on December 17, 2020.


By: _/s/ Jerry Hoang_             By: _/s/ Le Uyen Thi Nguyen_
Jerry Hoang, Plaintiff              Le Uyen Thi Nguyen, Plaintiff

Stafne Law *Advocacy & Consulting*
239 N. Olympic Ave.
Arlington, WA 98223
360.403.8700

1

## CERTIFICATE OF SERVICE

2      At the time of service, I was over 18 years of age and not a party to this action.

3      On December 17, 2020, I served true copies of the following document(s): [Proposed]

4  Amended Verified Complaint for Declaratory Judgement and to Enforce Recission Under

5  TILA and Washington's Tender Laws, RCW 62A.3-603 (a), (b), and (c), and the related Ex-

6  hibits on the interested parties in this action as follows:

7      DOUGLAS C. STASTNY, WSBA No. 52383 dcs@severson.com
       SEVERSON & WERSON
8      19100 Von Karman Avenue, Suite 700
       Irvine, California 92612
9      Telephone: (949) 442-7110 Facsimile: (949) 442-7118
       Attorneys for Defendants Bank of America, N.A., in its own capacity and as successor by
10     July 1, 2011 de jure merger with BAC Home Loans Servicing, LP; Federal National Mort-
11     gage Association; and Mortgage Electronic Registration Systems, Inc.

12     ☐      BY MAIL: I enclosed the document(s) in a sealed envelope or package ad-
       dressed to the persons at the addresses in a sealed envelope with postage prepaid.
13     ☐      BY E-MAIL: I caused a copy of the document(s) to be sent from e-mail
       address to the parties referenced above.
14     ☒      BY CM/ECF NOTICE OF ELECTRONIC FILING: I electronically filed
15     the document(s) with the Clerk of the Court by using the CM/ECF system.  Par-
       ticipants in the case who are registered CM/ECF users will be served by the
16     CM/ECF system.  Participants in the case who are not registered CM/ECF users
       will be served by mail or by other means permitted by the court rules.

17     I declare under penalty of perjury under the laws of the United States of America that the

18
   foregoing is true and correct and that I am employed in the office of a member of the bar of this
19
   Court at whose direction the service was made.
20
       DATED this 17th day of December 2020, in Mount Vernon, Washington.
21

22               By:  /s/ LeeAnn Halpin
                     LeeAnn Halpin, Paralegal
23

24

25

26

27

STAFNE LAW *Advocacy & Consulting*
239 N. Olympic Ave.
Arlington, WA 98223
360.403.8700

# Exhibit 1

CASE NO.: 2:17-cv-00874-JLR

*Jerry Hoang et al. v. Bank of America N.A. et al.*

**Electronically Recorded**
**20110713001123**

INGEO SYSTEMS INC          ADT                    14:00
Page 001 of 001
07/13/2011 04:13
King County, WA

When recorded mail to:
CoreLogic
450 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

*This space for Recorder's use*

DocID# 26882034406412662

Tax ID:     261320015306

Property Address:
13522 43rd Ave S
Tukwila, WA 98168-3204
WAO-ADT 14679068      6/23/2011

Recording Requested By:
Bank of America
Prepared By:
Mercedes Judilla
888-603-9011
450 E. Boundary St.
Chapin, SC 29036

MIN #: 1000255-0000590497-2          MERS Phone #:  888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 3300 S.W. 34TH AVENUE, SUITE 101 OCALA, FL 34474 does hereby grant, sell, assign, transfer and convey unto BAC HOME LOANS SERVICING, LP FKA COUNTRYWIDE HOME    LOANS SERVICING, LP whose address is 400 NATIONAL WAY, SIMI VALLEY, CA 93065 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:          BANK OF AMERICA, N.A.
Made By:                  JERRY HOANG, AND LE UYEN THI NGUYEN, HUSBAND AND WIFE
Original Trustee:         LS TITLE OF WASHINGTON
Date of Deed of Trust:    4/28/2010
Original Loan Amount:     $288,000.00

Recorded in King County, WA on: 5/5/2010, book N/A, page N/A and instrument number 20100505001375

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
6/28/11

MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.

By:
Christopher Herrera, Assistant Secretary

State of **California**
County of **Ventura**

On 6 - 2 8 - 2011 before me, Norma Rojas, Notary Public, personally appeared **Christopher Herrera**, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: Norma Rojas              (Seal)
My Commission Expires: 2/14/2015

NORMA ROJAS
Commission # 1925662
Notary Public - California
Ventura County
My Comm. Expires Feb 14, 2015

# EXHIBIT 2

### CASE NO.: 2:17-cv-00874-JLR

*Jerry Hoang et al. v. Bank of America N.A. et al.*

FILED

17 MAY 09 AM 9:00

KING COUNTY
SUPERIOR COURT CLERK
E-FILED
CASE NUMBER: 17-2-11754-4 SEA

1
2
3
4
5
6
7
8

## SUPERIOR COURT OF THE STATE OF WASHINGTON

## IN AND FOR THE COUNTY OF KING

| Jerry Hoang and Le Uyen Thi Nguyen, | **Case No.** _____ |
|---|---|
| Plaintiffs, | **VERIFIED COMPLAINT:** |
| v. | **1. TO ENFORCEMENT OF RESCISSION UNDER THE TRUTH IN LENDING ACT'S (TILA AND WASHINGTON TENDER LAWS, RCW 62A.3-603 (a), (b) and (c);** |
| Bank of America N.A (BANA); Federal National Mortgage Association (FANNIE MAE), Mortgage Electronic Registration Systems, Inc. (MERS), BAC Home Loans Servicing, LP, and John Does 1 -20. | **2. DECLARATORY JUDGEMENT.** |
| Defendants. | (Clerk's Action Required) |

Plaintiffs, Hoang and Nguyen, (hereinafter "Plaintiff") complaint against all defendants hereby and alleges as follows:

## I.      INTRODUCTION.

COMPLAINT FOR DECLARATORY JUDGEMENT - 1
#7411

JAMES A. WEXLER, WSBA

2700 NW PINE CONE DRIVE
SUITE 314
ISSAQUAH, WA. 98027
206.849.9455; WEX@SEANET.COM

1.1     This is an action to enforce a consumer's rescission under the Truth in

Lending Act (TILA), 15 U.S.C. §1601 et seq; 15 U.S.C § 1635; 12 CFR

§ 1026.23.

## II.     JURISDICTION AND VENUE.

2.1     This Court has subject matter jurisdiction pursuant to 15 U.S.C. §

1640(e). *Emrich v.Touche Ross & Co.,* 846 F.2d 1190, 1196 (9th Cir. 1988) (state courts

have concurrent jurisdiction with federal courts over TILA rescission claims).

2.2     Venue is proper as the loan and real property, which is the subject of the

dispute, respectively, was originated in and is located in King County, Washington.

## III.     PARTIES.

3.1.    Plaintiffs, Hoang and Nguyen are natural persons, at all times

relevant to this complaint have been the owner of real property located at 13522 43rd Avenue,

South Tukwila, WA 98168, parcel ID # 261320015606 and legal description of:

LOT 3, CITY OF TUKWILA SHORT PLAT NO. L01-033,

RECORDED UNDER RECORDING NO. 20040212900003,

IN KING COUNTY WASHINGTON

3.2.    Defendant, Bank of America N.A. (BANA) is a national bank organized and

existing under the laws of the United States with its headquarters and principal place of business

located at 101 South Tryon St Charlotte, North Carolina 28202.

BANA is a Mortgage Loan Servicer but alleged to be the Lender of alleged loan number #

220344064.

COMPLAINT FOR DECLARATORY JUDGEMENT - 2
#7411

JAMES A. WEXLER, WSBA

2700 NW PINE CONE DRIVE
SUITE 314
ISSAQUAH, WA. 98027
206.849.9455; WEX@SEANET.COM

3.3.      Defendant, Federal National Mortgage Association (Fannie Mae) is a federally chartered corporation organized and existing under the laws of the United States with its headquarters and principal place of business located at 13100 Worldgate Drive Herndon, Virginia 20170. Fannie Mae is alleged to be the owner of the loan number # 220344064.

IV.      FACTS AND ALLEGATIONS.

4.1.      On December 2004, Plaintiffs purchased a Home Loan with <u>Well Fargo Bank</u> for their principal dwelling, which located at 13522 43rd Ave S Tukwila, WA 98168. Attached Exhibit A (Warranty Deed)

4.2.      On April 30, 2010, Plaintiffs refinanced their home loan with <u>Bank of America,</u> <u>N.A,</u> alleged account or loan # 220344064, in which entitled to TILA. Plaintiffs executed   the Note and the Deed of Trust Attached Exhibit B (Note); C (Deed of Trust).

4.3.      Neither Hoang nor Nguyen has received the "Notice of right to Cancel" on the day of closing which is April 30, 2010. Attached Exhibit D (Plaintiff's Affidavit).

4.4.      On April 30, 2010, Defendants failed to satisfy the TILA's disclosure requirement by not delivering the required notice to Plaintiffs; therefore, the right to rescind is extended to 3 years after loan's consummation. Regulation Z provides that, if a creditor fails to deliver the required disclosures, "the right to rescind shall expire 3 years after consummation, upon transfer of all of the consumer's interest in the property, or upon sale of the property, whichever occurs first." 12 C.F.R. 226.23(a)(3); see 12 C.F.R. 1026.23(a)(3).

COMPLAINT FOR DECLARATORY JUDGEMENT - 3
#7411

JAMES A. WEXLER, WSBA

2700 NW PINE CONE DRIVE
SUITE 314
ISSAQUAH, WA. 98027
206.849.9455; WEX@SEANET.COM

4.5.     On April 15 2013, (Within 3 years of loan's consummation), Plaintiffs timely sent Notice of Rescission/Cancellation to defendants. Attached Exhibit E (Notice of Rescission). Also, it was recorded in King County Recording office # 20150813000493. Attached Exhibit F (Recorded Notice of Rescission).

4.6      The United State Postal Services have confirmed that Defendants have received Plaintiff's notice of Rescission. Attached Exhibit G (Copy of Certified Mail and Return Receipt Requested).

4.7     The Defendants did not file a suit seeking to invalidate nor terminate the validity of the Rescission Notice within 20 days of receipt as required by TILA, and Regulation Z. (15 U.S.C. § 1635(b); 12 C.F.R. § 1026.23(d)(2)). This is a due process <u>procedural requirement.</u> If the Defendants wanted the Rescission Notice vacated, they must file a lawsuit. <u>The right to challenge the Rescission Notice has been waived.</u> Attached Exhibit D (Plaintiff's affidavit).

4.8     Defendants failed to comply with TILA's requirement pursuant to 12 C.F.R 1026(d)(2); 12 C.F.R 226.23(d)(2), and the tender laws of the State of Washington as stated RCW 62A.3-603 (a), (b) and (c), though Plaintiffs were prepared and ready to tender but Defendants ignored Plaintiffs request to tender.

4.9     The Non-judicial foreclosure for Plaintiff's property has been initiated by Defendants (BANA) and Quality Loan Services Corporation of WA (alleged successor trustee) in February 2017. Attached Exhibit H (Notice of Default).

COMPLAINT FOR DECLARATORY JUDGEMENT - 4
#7411

JAMES A. WEXLER, WSBA

2700 NW PINE CONE DRIVE
SUITE 314
ISSAQUAH, WA. 98027
206.849.9455; WEX@SEANET.COM

4.10   It's an undisputed fact that Plaintiffs' Loan contract has been timely rescinded and was effected by the Operation of Law.

4.11   Plaintiffs' have never been declared in Default until Feb 2017, which was after the notice of Rescission sent in April 15, 2013.

4.12   In 2013, Plaintiff Hoang filed Quite Title case # C13-1013-JCC. Plaintiff Hoang did not bring the TILA issue into the case because there was a misunderstanding in TILA's law from a higher court across the country. QT's case got dismissed without prejudice and allowed Plaintiffs to amended complaint alleging that a foreclosure had been initiated.

## V.   CAUSE OF ACTION.

5.1.   The Federal Truth in Lending Act, 15 U.S.C. § 1635, Regulation Z § 226.23 allows for a borrower to rescind the Note and Deed of Trust by operation of law. This occurred in this case when Plaintiffs exercised the "right to Rescind" by sending the rescission notice to Defendants and more than 20 days had elapsed, Defendants should have filed an action necessary to reflect the termination of the security interest (Note and Deed of Trust) but the Defendants chose not to do so.

5.2   TILA gives borrowers a "right to rescind" for some kinds of consumer credit transactions. 15 U.S.C. § 1635(a); see 15 U.S.C. § 1635(d) (right to rescind is unwaivable except in emergency circumstances). Rescission applies to transactions in which a creditor takes a security interest in an obligor's "principal dwelling" and in return, provides money on property the obligor uses for non-business purposes. 15 U.S.C. § 1635(a). In 1974, TILA was amended to limit the time an obligor had to rescind a transaction to three years after the consummation of the

COMPLAINT FOR DECLARATORY JUDGEMENT - 5
#7411

JAMES A. WEXLER, WSBA

2700 NW PINE CONE DRIVE
SUITE 314
ISSAQUAH, WA. 98027
206.849.9455; WEX@SEANET.COM

transaction or sale of the property. 15 U.S.C. § 1635(f).

5.3     Of primary concern, and importance, as *clarified* in the United States

Supreme Court in *Jesinoski v. Countrywide Home Loans, Inc.,* 135 S. Ct. 790, 190 L. Ed. 2d 650,

574 U.S. (2015), is the obligor's exercise of the rescission which triggers a series of steps

through which the transaction is unwound. *See Beach,* 523 U.S. at 412-413.

First, when an obligor exercises his right to rescind, he is not liable for any finance

charge or other charge, and *any security interest given by the obligor becomes void upon*

*rescission.* 15 U.S.C. § 1635(b).

Second, within twenty days after receipt of the notice of rescission, the creditor shall

return to the obligor any money or property given as earnest money, down payment or otherwise,

and shall take any action necessary or appropriate to *reflect termination of any security interest*

created under the transaction. *Ibid.*

Third, upon performance by the creditor's obligations under this section, the obligor

shall tender any property the creditor has previously delivered (or its reasonable value). *Ibid.*

Pursuant to Reg Z notice is given by mail, telegram, or other means of written communication.

12 C.F.R.226.23(a)(2); See 12 C.F.R. Pt. 226, Apps. H-8, H-9 (Model forms for exercising

Rescission Right); 12 C.F.R. 1026.23(a)(2).

5.4.     The alleged "Loan" under Alleged Account Number 220344064,

according to TILA, HAS BEEN RESCINDED EFFECTIVE APRIL 15, 2013 and Defendants

have not filed an action against the Plaintiffs to vacate the Rescission Notice, nor have

Defendants has brought any actions for declarations that the Plaintiffs' rescission was not

COMPLAINT FOR DECLARATORY JUDGEMENT - 6
#7411

JAMES A. WEXLER, WSBA

2700 NW PINE CONE DRIVE
SUITE 314
ISSAQUAH, WA. 98027
206.849.9455; WEX@SEANET.COM

effective as a matter of law. Accordingly, based on Federal authority noted herein, the rescission of the Loan Transaction stands by operation of law and as a matter of law.

5.5     Plaintiffs efforts pursuant to RCW 62A. 3-360 (a), (b) and (c) to tender to Defendants were ignored.

5.6     The *Supreme Court* found that nowhere does § 1635(a) allow for a debate as to disputed or undisputed notices; simply put the transaction and its contracts are *void as a matter of law* upon mailing of the Notice of Rescission. *Jesionski, supra,* at 793. Based on the clarification of the T1LA rescission by the *Supreme Court,* Plaintiffs loan contracts became *void* as of April 15, 2013. Regardless of whether the creditor fulfills its legal requirement to return all funds paid on the loan and reflect the termination of the security instrument, the loan no longer exists. The contracts are void and any acts by any party based on the loan or contracts are illegal.

5.7     Specifically, the undisputed facts and evidences shows that Plaintiffs timely rescinded both their Note and Deed of Trust under TILA 15 U.S.C. § 1635 on April 15, 2013, effectively voiding all contract and debt. Therefore, Defendants had no standing to initiate a foreclosure or collect payment under the contract because those contracts were extinguished by the operation of Law on April 15, 2013.

5.8     The only way for the Rescission Notice to be undone under TILA and

Regulation Z is by another operation of law, i.e., under another judicial proceeding, which was not initiated by anyone in this matter. See, e.g., Alexandra P. Everhart Sickler, *And the Truth Shall Set You Free: Explaining Judicial Hostility to the Truth in Lending*

COMPLAINT FOR DECLARATORY JUDGEMENT - 7
#7411

JAMES A. WEXLER, WSBA

2700 NW PINE CONE DRIVE
SUITE 314
ISSAQUAH, WA. 98027
206.849.9455; WEX@SEANET.COM

*Act's Right to Rescind a Deed of Trust Loan,* 12 Rutgers J.L. & Pub. Pol'y 463, 482 (2015) ("As a practical consequence of [the *Jesinoski\* ruling, a lender now bears the burden of filing a lawsuit to contest the borrower's ability to rescind. In short, any questions about the mechanics of TILA rescission should be resolved in the lawsuit].").

5.9     All other parties are barred for lack of standing, to wit: an effective rescission voids the Note and Deed of Trust (see 15 U.S.C. § 1635, Regulation Z, and *Jesinoski).* No party in any court can obtain relief based upon a void instrument.

## VI.    PRAYER FOR RELIEF.

6.1     Plaintiffs re-allege each of the allegations as if set forth fully herein.

WHEREFORE, Plaintiffs hereby request this Court for enforcement of TILA's and declaratory relief per the April 15, 2013 rescission as follows:

1.    Declare Plaintiffs have already Rescinded the Loan's transaction through the means specified in the TILA's statute.

2.    Declare Plaintiff's Rescission notice was completed properly on April 15, 2013.

3.    Declare any and all encumbrances on subject property are removed.

4.    Declare Defendants are precluded from seeking foreclosure.

5.    Enter such Order to prevent the Defendants from using voided instruments

COMPLAINT FOR DECLARATORY JUDGEMENT - 8
#7411

JAMES A. WEXLER, WSBA

2700 NW PINE CONE DRIVE
SUITE 314
ISSAQUAH, WA. 98027
206.849.9455; WEX@SEANET.COM

1

against the Plaintiff's property.

2

6.    Enter such Orders necessary, as the court deems appropriate.

3

4

7.    Demand Defendants bear the expense of Attorney fees and costs for this

5

litigation.

6

8.    Permit court in its discretion and by the Consumer Protection Act to

7

include up to triple damages caused by Defendants assertion of a lien

8

against the property or claim against Plaintiffs.

9

10

Dated: the 8th day of May 2017

11

12

Respectfully Submitted at Issaquah, Washington,

13

JAMES A. WEXLER, ATTORNEY-AT-LAW

14

15

s/ James A. Wexler
James A. Wexler, WSBA # 7411

16

2700 NW Pine Cone Drive, Suite 314
Issaquah, Washington 98027

17

206-849-9455; wex@seanet.com
*Attorney for Jerry Hoang and Le Uyen Thi Nguyen*

18

19

20

21

22

23

24

25

26

COMPLAINT FOR DECLARATORY JUDGEMENT - 9
#7411

27

28

# EXHIBIT A

# *WARRANTY DEED*

# EXHIBIT A.

TILA COMPLAINT FOR HOANG AND NGUYEN.

AFTER RECORDING MAIL TO:

Jerry Hoang and Le Uyen Thi Nguyen
13522 43rd Avenue South
Tukwila, WA 98168



20041230000647
FIRST AMERICAN WD 20.00
PAGE001 OF 002
12/30/2004 09:58
KING COUNTY, WA

E2093495
12/30/2004 09:53
KING COUNTY, WA
TAX        $5,140.11
SALE   $344,950.00                    PAGE001 OF 001

Filed for Record at Request of:                                    **First American Title**
First American Title Insurance Company                      **Insurance Company**

## STATUTORY WARRANTY DEED

File No: **4204-449916 (CMN)**                      Date: **December 21, 2004**

Grantor(s): **Bay Development Corp**
Grantee(s): **Jerry Hoang and Le Uyen Thi Nguyen**
Abbreviated Legal: **Lot 3, CITY OF TUKWILA SHORT PLAT NO. L01-033, Recording No.
20040212900003**
Additional Legal on page:
Assessor's Tax Parcel No(s): **261320015306**     FIRST AMERICAN 449916

---

THE GRANTOR(S) **Bay Development Corporation, a Washington Corporation** for and in
consideration of **Ten Dollars and other Good and Valuable Consideration,** in hand paid, conveys,
and warrants to **Jerry Hoang and Le Uyen Thi Nguyen, husband and wife,** the following described
real estate, situated in the County of **King,** State of **Washington.**

**Lot 3 of CITY OF TUKWILA SHORT PLAT NO. L01-033, recorded under Recording No.
20040212900003, in King County, Washington.**

Subject To: This conveyance is subject to covenants, conditions, restrictions and easements, if any,
affecting title, which may appear in the public record, including those shown on any recorded plat or
survey.

Page 1 of 2                                                     LPB-10 7/97

APN: 261320015306

Statutory Warranty Deed
- continued

File No.: 4204-449916 (CMN)
Date: 12/21/2004

Bay Development Corp, a Washington
Corporation



By: Mark Ludden, Secretary/Treasurer

| STATE OF | Washington | ) |
| --- | --- | --- |
| | | )-ss |
| COUNTY OF | King | ) |

I certify that I know or have satisfactory evidence that **Mark Ludden** is/are the person(s) who appeared before me, and said person(s) acknowledged that he/she/they signed this instrument, on oath stated that he/she/they is/are authorized to execute the instrument and aknowledged it as the **Secretary/Treasurer** of **Bay Development Corp** to be the free and voluntary act of such party(ies) for the uses and purposes mentioned in this instrument.

Dated: _12-21-04_

Christina M. Nordyke
Notary Public in and for the State of Washington
Residing at: Sumner
My appointment expires: 10-9-07



LPB-10 7/97



STATE OF WASHINGTON }
County of King

The Director of Records & Licensing, King County, State of
Washington and exofficio Recorder of Deeds and other
instruments, do hereby certify the foregoing copy has been
compared with the original instrument as the same appears
on file and of record in the office and that the same is a true
and perfect transcript of said original and of the whole thereof.

Witness my hand and official seal this _____ day
of _____ **MAY 0 3 2013** 20_____

Director of Records & Licensing

By_____
Deputy
**Priscilla Harper**

# EXHIBIT B

# *PROMISSORY NOTE*

# EXHIBIT B

TILA COMPLAINT FOR HOANG AND NGUYEN.

Prepared by: SANDRA R. MORIARTY

LOAN #: 220344064

# NOTE

APRIL 28, 2010                    TUKWILA                    WASHINGTON
[Date]                              [City]                      [State]

13522 43RD AVE S, TUKWILA, WA 98168-3204
[Property Address]

## 1.    BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $288,000.00      (this amount is called "Principal"),
plus interest, to the order of the Lender. The Lender is
BANK OF AMERICA, N.A.
I will make all payments under this Note in the form of cash, check or money order.
I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to
receive payments under this Note is called the "Note Holder."

## 2.    INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate
of    5.625 %.
The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B)
of this Note.

## 3.    PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.
I will make my monthly payment on the  FIRST      day of each month beginning on  JUNE 01, 2010      .
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I
may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before
Principal. If, on  MAY 01, 2040      , I still owe amounts under this Note, I will pay those amounts in full on that date, which
is called the "Maturity Date."
I will make my monthly payments at
P.O. Box 515503, Los Angeles, CA 90051-6803
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,657.89      .

## 4.    BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a
"Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as
a Prepayment if I have not made all the monthly payments due under the Note.
I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my
Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to
the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the
Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the
Note Holder agrees in writing to those changes.

## 5.    LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan
charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be
reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which
exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe
under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial
Prepayment.

## 6.    BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN      calendar
days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be    5.000 % of
my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200 1/01

Fixed Rate Note
2005N-XX (09/08)(d/i)                              Page 1 of 2





LOAN #: 220344064

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)
JERRY HOANG                    -Borrower

_____ (Seal)
LE UYEN THI NGUYEN             -Borrower

_____ (Seal)
                               -Borrower

_____ (Seal)
                               -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200  1/01
Fixed Rate Note
2005N-XX (09/08)                          Page 2 of 2

# EXHIBIT C

# *DEED OF TRUST*

# EXHIBIT C

TILA COMPLAINT FOR HOANG AND NGUYEN.



Bank of America, NA
Recon Trust Co./TX2-979-01-07
PO Box 619003
Dallas, TX 75261-9003

After Recording Return To:
BANK OF AMERICA, N.A.
ReconTrust Co./TX2-979-01-07
P.O. Box 619003
Dallas, TX 75261-9003

Assessor's Parcel or Account Number: 261320015306
Abbreviated Legal Description:
LT 3, TUKWILA SPL #L01-033, REC #20040212900003

[Include lot, block and plat or section, township and range]

Full legal description located on page 3

Trustee:
LS TITLE OF WASHINGTON

Additional Grantees located on page

**TICOR TITLE**
045222·E
Ⓝ

[Space Above This Line For Recording Data]

6452622
[Escrow/Closing #]

00022034406404010
[Doc ID #]

## DEED OF TRUST

MIN 1000255-0000590497-2

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated  APRIL 28, 2010          , together with all Riders to this document.
(B)  "Borrower" is

JERRY HOANG, AND LE UYEN THI NGUYEN, HUSBAND AND WIFE

Borrower is the trustor under this Security Instrument.
(C)  "Lender" is
BANK OF AMERICA, N.A.

WASHINGTON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)          Form 3048 1/01

MERS Deed of Trust-WA
2006A-WA (08/08)(d/i)          Page 1 of 11



*23991*



*22034406400002006A*

DOC ID #: 00022034406404010

Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES          . Lender's address is
101 South Tryon Street, Charlotte, NC 28255
(D)  "Trustee" is
LS TITLE OF WASHINGTON
2707 COLBY AVE, STE. 1118, EVERETT, WA 98201
(E)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F)  "Note" means the promissory note signed by Borrower and dated   APRIL 28, 2010          . The
Note states that Borrower owes Lender
TWO HUNDRED EIGHTY EIGHT THOUSAND and 00/100

Dollars (U.S. $ 288,000.00       ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than  MAY 01, 2040
(G)  "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due
under the Note, and all sums due under this Security Instrument, plus interest.
(I)  "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders
are to be executed by Borrower [check box as applicable]:

☐ Adjustable Rate Rider    ☐ Condominium Rider          ☐ Second Home Rider
☐ Balloon Rider            ☐ Planned Unit Development Rider   ☐ 1-4 Family Rider
☐ VA Rider                 ☐ Biweekly Payment Rider     ☐ Other(s) [specify]

(J)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances
and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable
judicial opinions.
(K)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association or
similar organization.
(L)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions,
transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M)  "Escrow Items" means those items that are described in Section 3.
(N)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
(O)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.
(P)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or
any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under
RESPA.
(R)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not
that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and
assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment
of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably

DOC ID #: 00022034406404010

grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
     **COUNTY**       of       **KING** :
  [Type of Recording Jurisdiction]           [Name of Recording Jurisdiction]

LOT 3, CITY OF TUKWILA SHORT PLAT NO. L01-033, RECORDED UNDER RECORDING NO.
20040212900003, IN KING COUNTY, WASHINGTON

which currently has the address of
         **13522 43RD AVE S, TUKWILA**
              [Street/City]

Washington **98168-3204** ("Property Address"):
   [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late

WASHINGTON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)      Form 3048 1/01
MERS Deed of Trust-WA
2006A-WA (08/08)        Page 3 of 11

DOC ID #: 00022034406404010

charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security

DOC ID #: 0002203440640 4010

Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

DOC ID #: 00022034406404010

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on

DOC ID #: 0002203406404010

terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11.  Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12.  Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors

DOC ID #: 00022034406404010

in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent,

DOC ID #: 00022034406404010

Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental

DOC ID #: 00022034406404010

Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

**24. Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Use of Property.** The Property is not used principally for agricultural purposes.

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

DOC ID #: 00022034406404010

ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER WASHINGTON LAW.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
JERRY HOANG                                          - Borrower

_____ (Seal)
LE UYEN THI NGUYEN                                   - Borrower

_____ (Seal)
                                                     - Borrower

_____ (Seal)
                                                     - Borrower

STATE OF WASHINGTON
County of    King                          } ss:

On this day personally appeared before me _____
_____ Jerry Hoang  and _____
_____ Le Uyen Thi Nguyen _____

to me known to be the individual(s) described in and who executed the within and foregoing instrument, and acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and purposes therein mentioned.

GIVEN under my hand and official seal this ____ 30TH ____ day of April 2010.

_____
Notary Public in and for the State of Washington, residing at
Renton, WA
My Appointment Expires on    12-19-2012

NOEMI C. GARCIA
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
DECEMBER 19, 2012

WASHINGTON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)          Form 3048 1/01
MERS Deed of Trust-WA
2006A-WA (08/08)                          Page 11 of 11



**STATE OF WASHINGTON** }
**County of King**             }

The Director of Records & Licensing, King County, State of
Washington and exofficio Recorder of Deeds and other
instruments, do hereby certify the foregoing copy has been
compared with the original instrument as the same appears
on file and of record in the office and that the same is a true
and perfect transcript of said original and of the whole thereof.
        Witness my hand and official seal this _____ day
of_____ **MAY 0 3 2013** ___20____

        Director of Records & Licensing

By_____
                    Deputy

**Priscilla Harper**

# EXHIBIT D

# *PLAINTIFFS AFFIDAVIT*

# EXHIBIT D

TILA COMPLAINT FOR HOANG AND NGUYEN.

# AFFIDAVIT OF
# JERRY HOANG & LE UYEN THI NGUYEN.

Re: Assessor's Property Tax Parcel Number 261320-0153-06.
    Property address: 13522 43rd Ave S Tukwila, WA 98168.
    Bank of America, N.A Mortgage account # 220344064.

I, Jerry Hoang and Le Uyen Thi Nguyen, the undersigned, with personal knowledge of matters set forth herein, one of the people of the State of Washington, in correct public capacity, being of majority in age, competent to testify with clean hands, without waiving any rights, remedies, or defenses.

I, Jerry Hoang and Le Uyen Thi Nguyen declares, verifies and affirms that the facts stated herein are true, correct, and complete in all material fact, not misrepresented and made under the penalties of perjury of the laws of the United States of America and the Laws of the State of Washington.

We state as follow:

1.     On April 30, 2010, Jerry Hoang and Le Uyen Thi Nguyen did not received " Notice of right to cancel" from Loan's officer.

2.     On April 15, 2013, we have sent a NOTICE OF RESCISSION / CANCELLATION of a Mortgage Loan above (See Exhibit A) by Certified

Mail and Return Receipt through the US Postal Services to the Parties listed below:

Bank of America, N.A
101 South Tryon St.
Charlotte, North Carolina 28202
Certified Mail # 7007 2560 0000 6131 7416

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
1818 Library Street
Suite 300
Reston, VA 20190-6280
Certified Mail # 7011 2970 0004 4254 8695

BAC Home Loans Servicing, LP
450 American Street
Simi Valley, CA 93065.
Certified Mail # 7011 2970 0004 4254 8701

BAC Home Loans Servicing, LP
400 National Way
Simi Valley, CA 93065.
Certified Mail # 7007 2560 0000 6131 7409

Fannie Mae
13100 Worldgate Drive
Herndon, Virginia 20170.
Certified Mail # 7011 2970 0004 4254 8718

3. As of this present time, none of the Parties listed above has taken any legal action required by Law to vacate or terminate the validity of such Rescission / Cancellation of the Mortgage Loan contract.

Respectfully Submitted

Dated: This 14th day of August 2015

By: _____

Jerry Hoang

PO, Box 98032

Des Moines, WA 98198

### Notary Statement

State of Washington}

          } ss

County of King    }

BE IT REMEMBERED, that on the _14th_ day of _August_, _2015_, before me, the undersigned, a Notary Public in and for the State of Washington, personally appeared, Jerry Hoang who proved to me to be the same individual who executed the within instrument, and, affirmed that he is personally fully aware of the contents and accuracy of the statements made therein, and affirms that the document is, to the very best of his knowledge, true and correct.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official seal the day and year last above written.

By: _____

_Nataliya A Khochay_

Notary Public for _BECU_

Commission Expires on _February 28, 2018_

NATALIYA A. KHOCHAY
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
FEBRUARY 28, 2018

Page 3 of 4

Dated: This 14th day of August 2015

By: _____

Le Uyen Thi Nguyen

13522 43rd Ave So

Tukwila, WA 98168.

**Notary Statement**

State of Washington}

           } ss

County of King     }

BE IT REMEMBERED, that on the *14th* day of *August*, *2015*, before me, the undersigned, a Notary Public in and for the State of Washington, personally appeared, Le Uyen Thi Nguyen who proved to me to be the same individual who executed the within instrument, and, affirmed that he is personally fully aware of the contents and accuracy of the statements made therein, and affirms that the document is, to the very best of his knowledge, true and correct.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official seal the day and year last above written.

By: _____

*Nataliya P Khochay*

Notary Public for *BELL*

Commission Expires on *February 28, 2018*

```
NATALIYA A. KHOCHAY
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
FEBRUARY 28, 2018
```

Page 4 of 4

# EXHIBIT E

# *NOTICE OF RESCISSION*

# EXHIBIT E

TILA COMPLAINT FOR HOANG AND NGUYEN.

Jerry Hoang and Le Uyen Thi Nguyen
13522 43rd Avenue South
Tukwila, WA 98168

April 15, 2013

**NOTICE OF RESCISSION/CANCELLATION**

RE:   Account Number: 220344064.

Concerning the loan transaction, which we have entered into with Bank of America, NA on April 28, 2010, we hereby exercise our right pursuant to the Federal Truth in Lending Act, 15 U.S.C. § 1635, Regulation Z § 226.23.

Federal Truth in Lending Act does not require us to notify you of any specific violation(s), however, in light of the current circumstances, below are several violations that triggered this notice.

On April 30, 2010, the alleged lender violated multiple counts of Truth in Lending Act.

(a) Jerry Hoang did not receive the Right to Cancel Notice as required by law. All consumers with rescission rights must receive two copies of notice.

Regulation Z §226 .23(b)(1) *"Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind ... "*

(b) Failure to deliver Notice of Rescission violated Regulation Z §226.23(b)(v) where Jerry Hoang would have had a required Notice where a specific date by which he would have had the right to Rescind/Cancel the transaction.

Regulation Z §226.23(b)(v): *"The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:*

*(v) The date the rescission period expires. "*

Page 1 of 1

Failure to disclose the date the rescission period expires on the Notice of the Right to Rescind left with consumer extends the rescission period up to three years after consummation.

> (c) Le Uyen Thi Nguyen did not receive any Material Disclosures and did not receive two Right to Cancel Notices at any time, as required by law.

Any consumer "whose ownership interest is or will be subject to the security interest" has the right to rescind the transaction and to receive the disclosures.

Regulation Z §226.23 (a)(I), *"Consumer's right to rescind In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction "*.

Regulation Z §226.23(b)(1) *"Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in section 226.36(b)). The notice shall be on a separate document that identifies the transaction (and shall clearly and conspicuously disclose the following.*
> *(i) The retention or acquisition of a security interest in the consumer's principal dwelling.*
> *(ii) The consumer's right to rescind the transaction.*
> *(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.*
> *(iv) The effects of rescission, as described in paragraph (d) of this section.*
> *(v) The date the rescission period expires.*

Regulation Z §226.23(3) *The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation."*

Failure to provide two copies of Notice of the Right to Cancel/Rescind to Le Uyen Thi Nguyen extends the rescission period up to three years after consummation. Failure to provide one copy of material disclosures to Le Uyen

Thi Nguyen extends the rescission period up to three years after consummation.

However, please be advised that this is not an exhaustive list, and we do not waive unlisted violations, as other violations may be uncovered through discovery. Therefore, we have a continuing right to rescind the April 30, 2010 loan transaction, which we are exercising under the law.

The security interest held by BANK OF AMERICA N.A. and/or BAC HOME LOANS SERVICING, LP and/or MORTGAGE ELECTRONIC SYSTEMS, INC., and/or FANNIE MAE is void upon our rescission. *See* 15 U.S.C. § 1635; Regulation Z § 226.23.

Pursuant to the Regulation, you have twenty (20) calendar days after receipt of this notice of rescission to return all monies paid and to take action necessary or appropriate to reflect termination of the security interest.

We are prepared to discuss a tender obligation, should it arise, and satisfactory ways in which we may meet this obligation upon creditor's performance of its statutory duties. Please be advised that if you do not cancel the security interest and return all consideration paid by us within twenty (20) calendar days of receipt of this letter, you will be responsible for actual and statutory damages pursuant to 15 U.S.C. § 1640 (a).

This Notice of Rescission/Cancellation was sent via Certified Mail Returned Receipt and Regular mail to the following businesses and addresses:

Bank of America, N.A
101 South Tryon St.
Charlotte, North Carolina 28202
Certified Mail # 7007 2560 0000 6131 7416

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
1818 Library Street
Suite 300
Reston, VA 20190-6280
Certified Mail # 7011 2970 0004 4254 8695

BAC Home Loans Servicing, LP
450 American Street
Simi Valley, CA 93065.
Certified Mail # 7011 2970 0004 4254 8701

BAC Home Loans Servicing, LP
400 National Way
Simi Valley, CA 93065.
Certified Mail # 7007 2560 0000 6131 7409

Fannie Mae
13100 Worldgate Drive
Herndon, Virginia 20170.
Certified Mail # 7011 2970 0004 4254 8718

I WISH TO CANCEL

_____
Jerry Hoang

_04- 15- 2013_
Date

I WISH TO CANCEL

_____
Le Uyen Thi Nguyen

_04|15|13_
Date

# EXHIBIT F

# *RECORDED*
# *NOTICE OF RESCISSION*

# EXHIBIT F

TILA COMPLAINT FOR HOANG AND NGUYEN.

**Return Address:**

**JERRY HOANG**
**LE UYEN THI NGUYEN**
**PO BOX 98032**
**DES MOINES, WA 98198**



2015081300 0493
HOANG         N
PAGE-001 OF 005          76.00
08/13/2015 13:09
KING COUNTY, WA

Please print or type information **WASHINGTON STATE RECORDER'S Cover Sheet** (RCW 65.04)

---

**Document Title(s)** (or transactions contained therein): (all areas applicable to your document **must** be filled in)
**1. NOTICE OF RESCISSION / CANCELLATION**

---

**Reference Number(s) of Documents assigned or released:**
Additional reference #'s on page 4 of document

---

**Grantor(s)** Exactly as name(s) appear on document
**1. JERRY HOANG**
**2. LE UYEN THI NGUYEN**

---

**Grantee(s)** Exactly as name(s) appear on document
    1. **BANK OF AMERICA, N/A (BOA).**
    2. **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC (MERS).**
    3. **BAC HOME LOANS SERVICING, LP (BAC).**
    4. **FANNIE MAE.**

---

**Legal description** (abbreviated: i.e. lot, block, plat or section, township, range)
**FOSTTORIA GARDEN TRS, LOT 3 TGW UND INT IN TRACT A OF TUKWILA SP # L01-033 REC # 20040212900003 SD SP DAF-BEING LOT 19 OF SD PLAT LYING, PROPERTY ADDRESS 13522 43RD AVE SO TUKWILA, WA 98168**

---

**Assessor's Property Tax Parcel/Account Number** ☐ _Assessor Tax # not yet assigned
**261320-0153-06**

---

The Auditor/Recorder will rely on the information provided on this form. The staff will not read the document to verify the accuracy or completeness of the indexing information provided herein.

---

"I am signing below and paying an additional $50 recording fee (as provided in RCW 36.18.010 and referred to as an emergency nonstandard document), because this document does not meet margin and formatting requirements. Furthermore, I hereby understand that the recording process may cover up or otherwise obscure some part of the text of the original document as a result of this request."

_____ Signature of Requesting Party

Note to submitter: Do not sign above nor pay additional $50 fee if the document meets margin/formatting requirements

Jerry Hoang and Le Uyen Thi Nguyen
13522 43rd Avenue South
Tukwila, WA 98168

April 15, 2013

**NOTICE OF RESCISSION/CANCELLATION**

RE:   Account Number: 220344064.

Concerning the loan transaction, which we have entered into with Bank of America, NA on April 28, 2010, we hereby exercise our right pursuant to the Federal Truth in Lending Act, 15 U.S.C. § 1635, Regulation Z § 226.23.

Federal Truth in Lending Act does not require us to notify you of any specific violation(s), however, in light of the current circumstances, below are several violations that triggered this notice.

On April 30, 2010, the alleged lender violated multiple counts of Truth in Lending Act.

(a) Jerry Hoang did not receive the Right to Cancel Notice as required by law. All consumers with rescission rights must receive two copies of notice.

Regulation Z §226 .23(b)(1) *"Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind ... "*

(b) Failure to deliver Notice of Rescission violated Regulation Z §226.23(b)(v) where Jerry Hoang would have had a required Notice where a specific date by which he would have had the right to Rescind/Cancel the transaction.

Regulation Z §226.23(b)(v): *"The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:*
*(v) The date the rescission period expires. "*

Page 1 of 1

Failure to disclose the date the rescission period expires on the Notice of the Right to Rescind left with consumer extends the rescission period up to three years after consummation.

> (c) Le Uyen Thi Nguyen did not receive any Material Disclosures and did not receive two Right to Cancel Notices at any time, as required by law.

Any consumer "whose ownership interest is or will be subject to the security interest" has the right to rescind the transaction and to receive the disclosures.

Regulation Z §226.23 (a)(I), *"Consumer's right to rescind In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction".*

Regulation Z §226.23(b)(1) *"Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in section 226.36(b)). The notice shall be on a separate document that identifies the transaction (and shall clearly and conspicuously disclose the following.*
> *(i) The retention or acquisition of a security interest in the consumer's principal dwelling.*
> *(ii) The consumer's right to rescind the transaction.*
> *(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.*
> *(iv) The effects of rescission, as described in paragraph (d) of this section.*
> *(v) The date the rescission period expires.*

Regulation Z §226.23(3) *The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation."*

Failure to provide two copies of Notice of the Right to Cancel/Rescind to Le Uyen Thi Nguyen extends the rescission period up to three years after consummation. Failure to provide one copy of material disclosures to Le Uyen

Thi Nguyen extends the rescission period up to three years after consummation.

However, please be advised that this is not an exhaustive list, and we do not waive unlisted violations, as other violations may be uncovered through discovery. Therefore, we have a continuing right to rescind the April 30, 2010 loan transaction, which we are exercising under the law.

The security interest held by BANK OF AMERICA N.A. and/or BAC HOME LOANS SERVICING, LP and/or MORTGAGE ELECTRONIC SYSTEMS, INC., and/or FANNIE MAE is void upon our rescission. *See* 15 U.S.C. § 1635; Regulation Z § 226.23.

Pursuant to the Regulation, you have twenty (20) calendar days after receipt of this notice of rescission to return all monies paid and to take action necessary or appropriate to reflect termination of the security interest.

We are prepared to discuss a tender obligation, should it arise, and satisfactory ways in which we may meet this obligation upon creditor's performance of its statutory duties. Please be advised that if you do not cancel the security interest and return all consideration paid by us within twenty (20) calendar days of receipt of this letter, you will be responsible for actual and statutory damages pursuant to 15 U.S.C. § 1640 (a).

This Notice of Rescission/Cancellation was sent via Certified Mail Returned Receipt and Regular mail to the following businesses and addresses:

Bank of America, N.A
101 South Tryon St.
Charlotte, North Carolina 28202
Certified Mail # 7007 2560 0000 6131 7416

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
1818 Library Street
Suite 300
Reston, VA 20190-6280
Certified Mail # 7011 2970 0004 4254 8695

Page 3 of 3

BAC Home Loans Servicing, LP
450 American Street
Simi Valley, CA 93065.
Certified Mail # 7011 2970 0004 4254 8701

BAC Home Loans Servicing, LP
400 National Way
Simi Valley, CA 93065.
Certified Mail # 7007 2560 0000 6131 7409

Fannie Mae
13100 Worldgate Drive
Herndon, Virginia 20170.
Certified Mail # 7011 2970 0004 4254 8718

I WISH TO CANCEL                    I WISH TO CANCEL

_____            _____
Jerry Hoang                          Le Uyen Thi Nguyen

04-15- 2013                          04 15 13
Date                                 Date

# EXHIBIT G

# *CERTIFIED MAIL & RETURN RECEIPT REQUESTED.*

# EXHIBIT G

TILA COMPLAINT FOR HOANG AND NGUYEN.

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

**OFFICIAL USE**

| | | |
|---|---|---|
| Postage | $ $0.46 | 0011 |
| Certified Fee | $3.10 | 36186 |
| Return Receipt Fee (Endorsement Required) | $2.55 | APR 15 2013 |
| Restricted Delivery Fee (Endorsement Required) | $0.00 | |
| Total Postage & Fees | $ $6.11 | 04/15/2013 |

Sent To  Bo. NA
Street, Apt No.; or PO Box No.  101 So Tryon St
City, State, ZIP+4  Charlotte , NC 28202

7007 2560 0000 6131 7416

---

**SENDER:**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature  Pitney Bowes on behalf of
X  Bank of America

B. Received by (Printed Name)   C. Date of Delivery  4/19/13

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

1. Article Addressed to:

Bank of America
101 So Tryon St
Charlotte, NC
28202

3. Service Type
   ☑ Certified Mail   ☐ Express Mail
   ☐ Registered   ☐ Return Receipt for Merchandise
   ☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from service label)   7007 2560 0000 6131 7416

PS Form 3811, February 2004   Domestic Return Receipt

---

**UNITED STATES POSTAL SERVICE**

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

**JERRY HOANG**
**LE UYEN THI NGUYEN**

980   EE 1 113C 00 04/23/13
NOTIFY SENDER OF NEW ADDRESS
HOANG JERRY
PO BOX 98032
DES MOINES WA 98198-0032

BC: 98198003232   *2589-07962-23-40

**U.S. Postal Service**
**CERTIFIED MAIL. RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.46 |
| Certified Fee | | $3.10 |
| Return Receipt Fee (Endorsement Required) | | $2.55 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.11 |

04/16/2013

Sent To
FANNIE MAE
Street, Apt. No.; or PO Box No. 13100 Worldgate Dr
City, State, ZIP+4 HERNDON, VA 20170

7011 2970 0004 4254 8718

---

SENDER:

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

FANNIE MAC
13100 WORLDGATE -DR
HERNDON, VA
20170

A. Signature
X ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
A. BRONGUM   4/9

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below: ☐ No

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label)
7011 2970 0004 4254 8718

PS Form 3811, February 2004   Domestic Return Receipt

---

**UNITED STATES POSTAL SERVICE**

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

**JERRY HOANG**

980 6E 1 113C 00 04/22/13
NOTIFY SENDER OF NEW ADDRESS
HOANG JERRY
PO BOX 98032
DES MOINES WA 98198-0032

BC: 98198003232   *1017-07231-18-39

8320422



U.S. Postal Service
CERTIFIED MAIL·· RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.46 |
| Certified Fee | | $3.10 |
| Return Receipt Fee (Endorsement Required) | | $2.55 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.11 |

04/15/2013

7011 2970 0004 4254 8675

Sent To  M.E.R.S
Street, Apt. No.; or PO Box No.  1818 LIBRARY ST #300
City, State, ZIP+4  RESTON, VA 20190



SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

M.E.R.S
1818 LIBRARY ST
#300
RESTON, VA
20190

RECEIVED
MERS

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.
4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer from)  7011 2970 0004 4254 8675

PS Form 3811, February 2004       Domestic Return Receipt

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

JERRY HOANG
LE UYEN THI NGUYEN
13522 43RD AVE S
TUKWILA, WA 98168



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.46 |
| Certified Fee | | $3.10 |
| Return Receipt Fee (Endorsement Required) | | $2.55 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.11 |

Sent To: B. A C
Street, Apt. No.; or PO Box No. 400 — NATIONAL WAY
City, State, ZIP+4 CA. 93065

7007 2560 0000 6131 7409

---

**SENDER:**

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
DAVID Quintanill ☐ Agent ☐ Addressee

B. Received by (Printed Name) C. Date of Delivery

1. Article Addressed to:

B. A.C
400 NATIONAL WAY
Simi Valley, CA
93065

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

APR 18 2013

3. Service Type
☐ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label): 7007 2560 0000 6131 7409

PS Form 3811, February 2004 Domestic Return Receipt

---

**UNITED STATES POSTAL SERVICE**

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

JERRY HOANG
HOANS22 981684056-1113 04/26/13
NOTIFY SENDER OF NEW ADDRESS
HOANG JERRY
PO BOX 98032
DES MOINES WA 98198-0032



U.S. Postal Service
CERTIFIED MAIL · RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

SI O F F I C I A L   U S E

| | | |
|---|---|---|
| Postage | $ | $0.46 |
| Certified Fee | | $3.10 |
| Return Receipt Fee (Endorsement Required) | | $2.55 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.11 |

Postmark
APR 15 2013

Sent To
B.A.C.
Street, Apt. No.; or PO Box No.
450 American ST
City, State, ZIP+4
CA  93065

PS Form 3800, April 2002

---

SENDER

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
X  DAVID Quintanilla  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)      C. Date of Delivery

1. Article Addressed to:

B.A.
450 American ST
Simi Valley, CA
93065

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

APR 18 2013

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered       ☐ Return Receipt for Merchandise
☐ Insured Mail     ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number (Transfer from service label)
7011 2970 0004 4254 8701

PS Form 3811, February 2004     Domestic Return Receipt     102595-02-M-1540

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

JERRY HOANG
LE UYEN THI NGUYEN

980    EE 1 113C 00 04/23/13
NOTIFY SENDER OF NEW ADDRESS
HOANG JERRY
PO BOX 98032
DES MOINES WA 98198-0032

BC: 98198003232    *3062-07430-18-40

# EXHIBIT H

# *NOTICE OF DEFAULT*

# EXHIBIT H

TILA COMPLAINT FOR HOANG AND NGUYEN

*13522*

# NOTICE OF DEFAULT
Pursuant to the Revised Code of Washington 61.24, et seq.

To:   JERRY HOANG AND LE UYEN THI NGUYEN, HUSBAND AND WIFE
T.S. No.:   WA-16-735786-BB

### THIS NOTICE IS ONE STEP IN A PROCESS THAT COULD RESULT IN YOUR LOSING YOUR HOME.

You may be eligible for mediation in front of a neutral third party to help save your home.

**CONTACT A HOUSING COUNSELOR OR AN ATTORNEY LICENSED IN WASHINGTON NOW** to assess your situation and refer you to mediation if you might benefit. Mediation MUST be requested between the time you receive the Notice of Default and no later than twenty days after the Notice of Trustee Sale is recorded.

**DO NOT DELAY.** If you do nothing, a notice of sale may be issued as soon as 30 days from the date of this notice of default. The notice of sale will provide a minimum of 120 days' notice of the date of the actual foreclosure sale.

**BE CAREFUL** of people who claim they can help you. There are many individuals and businesses that prey upon borrowers in distress. **REFER TO THE CONTACTS BELOW** for sources of assistance.

### SEEKING ASSISTANCE

Housing counselors and legal assistance may be available at little or no cost to you. If you would like assistance in determining your rights and opportunities to keep your house, you may contact the following:

The statewide foreclosure hotline for assistance and referral to housing counselors recommended by the Housing Finance Commission: Toll-free: **1-877-894-HOME (1-877-894-4663)** or Web site: http://www.dfi.wa.gov/consumers/homeownership/post_purchase_counselors_foreclosure.htm.

The United States Department of Housing and Urban Development: Toll-free: **1-800-569-4287** or National Web Site: http://portal.hud.gov/hudportal/HUD or for Local counseling agencies in Washington: http://www.hud.gov/offices/hsg/sfh/hcc/fc/index.cfm?webListAction=search&searchstate=WA&filterSvc=dfs.

The statewide civil legal aid hotline for assistance and referrals to other housing counselors and attorneys: Telephone: **1-800-606-4819** or Web site: http://nwjustice.org/what-clear.

The current owner of the Note secured by the Deed of Trust is:
Federal National Mortgage Association ("Fannie Mae"), a corporation organized and existing under the laws of the United States of America.
14221 Dallas Parkway Suite 1000
Dallas, TX 7525-

TS No.: WA-16-755786-BB

The Loan Servicer Bank of America, N.A. is managing your loan. For information about your loan you should contact:

Bank of America, N.A.
7105 Corporate Drive
Plano, TX 75024

1.800-669-6607

1.  **DEFAULT:**

You are hereby notified that the Beneficiary has declared you in default on the obligation secured by a Deed of Trust recorded on 5/5/2010 in Auditor's File No. 20100505001375, Records of KING County, Washington, which Deed of Trust encumbers the following described real property:

LOT 3, CITY OF TUKWILA SHORT PLAT NO. L01-033, RECORDED UNDER RECORDING NO. 20040212900003, IN KING COUNTY, WASHINGTON.

Tax Parcel No. 261320015306

Commonly known as: 13522 43RD AVE S, TUKWILA, WA 98168-3204

2.  **STATEMENT OF DEFAULT AND ITEMIZED ACCOUNT OF AMOUNT IN ARREARS:**

The present beneficiary under said Deed of Trust alleges that you or your successors in interest are in default for the following reasons:

Failure to make the 3/1/2011 payment of principal and/or interest and all subsequent payments, together with late charges, impounds, advances, taxes, delinquent payments on senior liens, or assessments, if any. To wit:

| Payment Information | | |
|---|---|---|
| From | Through | Total Payments |
| 3/1/2011 | 1/31/2017 | $119,368.08 |

| Late Charges | | |
|---|---|---|
| From | Through | Total Late Charges |
| 3/1/2011 | 1/31/2017 | $248.67 |

| Beneficiary's Advances, Costs, And Expenses | |
|---|---|
| Total Advances: | $0.00 |

TS No.: WA-16-755786-BB

Promissory Note Information:

| Note Dated: | 4/28/2010 |
|---|---|
| Note Amount: | $288,000.00 |
| Note Maturity Date: | 5/1/2040 |
| Interest Paid To: | 2/1/2011 |
| Next Due Date: | 3/1/2011 |

3.    OTHER CHARGES, COSTS AND FEES:

In addition to the amounts in arrears specified above, you are or may be obligated to pay the following charges, costs and fees to cure the default under the Deed of Trust if cure is made before recording the Notice of Trustee's Sale:

| No. | Description | Amount |
|---|---|---|
| a. | Cost of title report for foreclosure: | $0.00 |
| b. | Service or posting Notice of Default: | $50.00 |
| c. | Postage: | $19.52 |
| d. | Attorney Fee: | $0.00 |
| e. | Trustee's Fee: | $0.00 |
| f. | Inspection Fee: | $0.00 |
| g. | Recording Fees: | $21.00 |
|  | TOTAL CHARGES, COSTS AND FEES: | $90.52 |

4.    REINSTATEMENT: IMPORTANT! PLEASE READ!

UNTIL SUCH TIME AS A NOTICE OF TRUSTEE'S SALE IS RECORDED, THE ESTIMATED TOTAL AMOUNT NECESSARY TO REINSTATE YOUR NOTE AND DEED OF TRUST IS THE SUM OF PARAGRAPHS 2 AND 3 IN THE AMOUNT OF $119,787.27, PLUS ANY MONTHLY PAYMENTS, LATE CHARGES, OR BENEFICIARY COSTS WHICH HAVE BECOME DUE SINCE THE DATE OF THIS NOTICE OF DEFAULT.  Any new defaults not involving payment of money that occur after the date of this notice must also be cured in order to effect reinstatement.  In addition, because some of the charges can only be estimated at this time, and because the amount necessary to reinstate may include presently unknown expenditures required to preserve the property or to comply with state or local law, it will be necessary for you to contact the trustee before the time you tender reinstatement so that you may be advised of the exact amount you will be required to pay.

Payment must be made in the full amount by certified funds, and delivered or mailed as specified by the Beneficiary.  Personal checks will not be accepted.

Reinstatement monies may be tendered to:
Bank of America, N.A.

Reinstatement monies may be mailed to:
Quality Loan Service Corp. of Washington
C/O Quality Loan Service Corporation
411 Ivy Street, San Diego, CA 92101

For questions call toll-free: (866) 645-7711

Reinstatement monies may be dropped off at:
Quality Loan Service Corp. of Washington
108 1st Ave South, Suite 202
Seattle, WA 98104

For questions call toll-free: (866) 925-0241

If your default included a default other than failure to pay payments when due, then in order to reinstate the Note and Deed of Trust before the Notice of Trustee's Sale is recorded, you must cure such other default(s).

TS No.: WA-16-752784-BB

**5.   CONSEQUENCES OF DEFAULT.**

a.   Failure to cure said alleged default within thirty days of the date of mailing of this notice, or if personally served, within thirty days of the date of personal service hereof, may lead to recordation, transmittal and publication of a Notice of Sale, and that the property described herein may be sold at public auction at a date not less than one hundred fifty days from the date of service of this notice;

b.   The effect of the recordation, transmittal and publication of a notice of sale will be to (i) increase the costs and fees and (ii) publicize the default and advertise the grantor's property for sale.

c.   Notwithstanding a future recordation of a Notice of Trustee's Sale, you may reinstate the deed of trust, and cure the default described above on or before the eleventh (11th) day before the Trustee's Sale of the property at public auction.

d.   The effect of the sale of the grantor's property by the trustee will be to deprive the grantor or his successor in interest and all those who hold by, through or under him of all their interest in the property described herein.

**6.   RECOURSE TO COURTS.**

The grantor or any successor in interest has recourse to the courts pursuant to RCW 61.24.130 to contest the alleged default on any proper ground;

**7.   DOCUMENTS ATTACHED.**

•   Beneficiary or Authorized Agent's Foreclosure Loss Mitigation Form declaring compliance with RCW 61.24.031.

**QUALITY MAY BE CONSIDERED A DEBT COLLECTOR ATTEMPTING TO COLLECT A DEBT AND ANY INFORMATION OBTAINED WILL BE USED FOR THAT PURPOSE.**

Date: 1/27/2017

Quality Loan Service Corp. Of Washington, Trustee

Kristin McDonald, Assistant Secretary

# Exhibit 3

### Case No.: 2:17-cv-00874-JLR

*Jerry Hoang et al. v. Bank of America N.A. et al.*

AFTER RECORDING MAIL TO:

Jerry Hoang and Le Uyen Thi Nguyen
13522 43rd Avenue South
Tukwila, WA 98168



20041230000647
FIRST AMERICAN WD          20.00
PAGE001 OF 002
12/30/2004 09:58
KING COUNTY, WA

E2093495
12/30/2004 09:53
KING COUNTY, WA
TAX      $5,140.11
SALE     $344,950.00                    PAGE001 OF 001

Filed for Record at Request of:                          **First American Title
First American Title Insurance Company                    Insurance Company**

## STATUTORY WARRANTY DEED            2/$20

**File No: 4204-449916 (CMN)**                      Date: **December 21, 2004**

Grantor(s): **Bay Development Corp**
Grantee(s): **Jerry Hoang and Le Uyen Thi Nguyen**
Abbreviated Legal: **Lot 3, CITY OF TUKWILA SHORT PLAT NO. L01-033, Recording No.
20040212900003**
Additional Legal on page:
Assessor's Tax Parcel No(s): **261320015306**     FIRST AMERICAN 449916

---

**THE GRANTOR(S) Bay Development Corporation, a Washington Corporation** for and in
consideration of **Ten Dollars and other Good and Valuable Consideration,** in hand paid, conveys,
and warrants to **Jerry Hoang and Le Uyen Thi Nguyen, husband and wife,** the following described
real estate, situated in the County of **King,** State of **Washington.**

**Lot 3 of CITY OF TUKWILA SHORT PLAT NO. L01-033, recorded under Recording No.
20040212900003, in King County, Washington.**

Subject To: This conveyance is subject to covenants, conditions, restrictions and easements, if any,
affecting title, which may appear in the public record, including those shown on any recorded plat or
survey.

APN: 261320015306

Statutory Warranty Deed
- continued

File No.: 4204-449916 (CMN)
Date: 12/21/2004

Bay Development Corp, a Washington
Corporation



By: Mark Ludden, Secretary/Treasurer

STATE OF        Washington        )
                                  )-ss
COUNTY OF       King              )

I certify that I know or have satisfactory evidence that **Mark Ludden** is/are the person(s) who appeared before me, and said person(s) acknowledged that he/she/they signed this instrument, on oath stated that he/she/they is/are authorized to execute the instrument and acknowledged it as the **Secretary/Treasurer** of **Bay Development Corp** to be the free and voluntary act of such party(ies) for the uses and purposes mentioned in this instrument.

Dated:    12-21-04

Christina M. Nordyke
Notary Public in and for the State of Washington
Residing at: Sumner
My appointment expires: 10-9-07



LPB-10 7/97



**STATE OF WASHINGTON** }
**County of King**

The Director of Records & Licensing, King County, State of
Washington and exofficio Recorder of Deeds and other
instruments, do hereby certify the foregoing copy has been
compared with the original instrument as the same appears
on file and of record in the office and that the same is a true
and perfect transcript of said original and of the whole thereof.
Witness my hand and official seal this _____ day
of_____ **MAY 0 3 2013** 20____

Director of Records & Licensing

By_____
Deputy
**Priscilla Harper**

# Exhibit 4

Case No.: 2:17-cv-00874-JLR

*Jerry Hoang et al. v. Bank of America N.A. et al.*

Prepared by: SANDRA R. MORIARTY

LOAN #: 220344064

# NOTE

APRIL 28, 2010        TUKWILA        WASHINGTON
[Date]        [City]        [State]

13522 43RD AVE S, TUKWILA, WA 98168-3204
[Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $288,000.00     (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
BANK OF AMERICA, N.A.

I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of 5.625 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3. PAYMENTS

### (A) Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the FIRST     day of each month beginning on JUNE 01, 2010     . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on MAY 01, 2040     , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 515503, Los Angeles, CA 90051-6803
or at a different place if required by the Note Holder.

### (B) Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,657.89

## 4. BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under this Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5. LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6. BORROWER'S FAILURE TO PAY AS REQUIRED

### (A) Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of FIFTEEN     calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT      Form 3200 1/01

Fixed Rate Note
2005N-XX (09/08)(d/i)             Page 1 of 2





LOAN #: 220344064

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**· (E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.   GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.   OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.   WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.   UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_____ (Seal)          _____ (Seal)
JERRY HOANG                     -Borrower          LE UYEN THI NGUYEN              -Borrower

_____ (Seal)          _____ (Seal)
                                -Borrower                                         -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200  1/01

Fixed Rate Note
2005N-XX (09/08)                              Page 2 of 2

# EXHIBIT 5

CASE NO.: 2:17-cv-00874-JLR

*Jerry Hoang et al. v. Bank of America N.A. et al.*

Bank of America, NA
Recon Trust Co./TX2-979-01-07
PO Box 619003
Dallas, TX 75261-9003



TICOR NATIONAL DT
PAGE-001 OF 011
05/05/2010 15:47
KING COUNTY, WA
73.00

After Recording Return To:
BANK OF AMERICA, N.A.
ReconTrust Co./TX2-979-01-07
P.O. Box 619003
Dallas, TX 75261-9003

Assessor's Parcel or Account Number: 261320015306
Abbreviated Legal Description:
LT 3, TUKWILA SPL #L01-033, REC #20040212900003

[Include lot, block and plat or section, township and range]

Full legal description located on page 3

Trustee:
LS TITLE OF WASHINGTON

Additional Grantees located on page

**TICOR TITLE** ———— [Space Above This Line For Recording Data] ————

045202.-2

| 6452622 | 00022034406404010 |
|---|---|
| [Escrow/Closing #] | [Doc ID #] |

## DEED OF TRUST

MIN 1000255-0000590497-2

### DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) **"Security Instrument"** means this document, which is dated   APRIL 28, 2010          , together with all Riders to this document.

(B) **"Borrower"** is

JERRY HOANG, AND LE UYEN THI NGUYEN, HUSBAND AND WIFE

Borrower is the trustor under this Security Instrument.
(C) **"Lender"** is
BANK OF AMERICA, N.A.

WASHINGTON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)          Form 3048 1/01
MERS Deed of Trust-WA
2006A-WA (08/08)(d/i)                    Page 1 of 11



* 2 3 9 9 1 *



* 2 2 0 3 4 4 0 6 4 0 0 0 0 0 2 0 0 6 A *

DOC ID #: 00022034406404010

Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES                    . Lender's address is
101 South Tryon Street, Charlotte, NC 28255
(D)  "Trustee" is
LS TITLE OF WASHINGTON
2707 COLBY AVE, STE. 1118, EVERETT, WA 98201
(E)  "MERS" is Mortgage Electronic Registration Systems, Inc. MERS is a separate corporation that is acting
solely as a nominee for Lender and Lender's successors and assigns. MERS is the beneficiary under this
Security Instrument. MERS is organized and existing under the laws of Delaware, and has an address and
telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F)  "Note" means the promissory note signed by Borrower and dated   APRIL 28, 2010          . The
Note states that Borrower owes Lender
TWO HUNDRED EIGHTY EIGHT THOUSAND and 00/100

Dollars (U.S. $ 288,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than  MAY 01, 2040
(G)  "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(H)  "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due
under the Note, and all sums due under this Security Instrument, plus interest.
(I)  "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders
are to be executed by Borrower [check box as applicable]:

| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
|---|---|---|
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

(J)  "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances
and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable
judicial opinions.
(K)  "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners association or
similar organization.
(L)  "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check,
draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument,
computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an
account. Such term includes, but is not limited to, point-of-sale transfers, automated teller machine transactions,
transfers initiated by telephone, wire transfers, and automated clearinghouse transfers.
(M)  "Escrow Items" means those items that are described in Section 3.
(N)  "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by
any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage
to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property;
(iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or
condition of the Property.
(O)  "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the
Loan.
(P)  "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(Q)  "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or
any additional or successor legislation or regulation that governs the same subject matter. As used in this
Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard to a
"federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage loan" under
RESPA.
(R)  "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not
that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY
The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and
assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment
of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's
covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably

DOC ID #: 00022034406404010

grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
      **COUNTY**         of         **KING**      :
   [Type of Recording Jurisdiction]             [Name of Recording Jurisdiction]

LOT 3, CITY OF TUKWILA SHORT PLAT NO. L01-033, RECORDED UNDER RECORDING NO.
20040212900003, IN KING COUNTY, WASHINGTON

which currently has the address of

         **13522 43RD AVE S, TUKWILA**
             [Street/City]

Washington **98168-3204** ("Property Address"):
  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late

WASHINGTON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)    Form 3048 1/01
MERS Deed of Trust-WA
2006A-WA (08/08)      Page 3 of 11

DOC ID #: 00022034406404010

charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.    **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4.    **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security

DOC ID #: 00022034406404010

Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

**5.    Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

**6.    Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

DOC ID #: 00022034406404010

7.   **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10.   **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on

DOC ID #: 0002203406404010

terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors

DOC ID #: 00022034406404010

in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. **Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. **Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. **Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. **Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. **Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

18. **Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent,

WASHINGTON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)    Form 3048 1/01
MERS Deed of Trust-WA
2006A-WA (08/08)    Page 8 of 11

DOC ID #: 00022034406404010

Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19.  **Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20.  **Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21.  **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental

DOC ID #: 00022034406404010

Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property at public auction at a date not less than 120 days in the future. The notice shall further inform Borrower of the right to reinstate after acceleration, the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale, and any other matters required to be included in the notice by Applicable Law. If the default is not cured on or before the date specified in the notice, Lender at its option, may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and/or any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall give written notice to Trustee of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee and Lender shall take such action regarding notice of sale and shall give such notices to Borrower and to other persons as Applicable Law may require. After the time required by Applicable Law and after publication of the notice of sale, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of the Property for a period or periods permitted by Applicable Law by public announcement at the time and place fixed in the notice of sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it or to the clerk of the superior court of the county in which the sale took place.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Such person or persons shall pay any recordation costs and the Trustee's fee for preparing the reconveyance.

**24. Substitute Trustee.** In accordance with Applicable Law, Lender may from time to time appoint a successor trustee to any Trustee appointed hereunder who has ceased to act. Without conveyance of the Property, the successor trustee shall succeed to all the title, power and duties conferred upon Trustee herein and by Applicable Law.

**25. Use of Property.** The Property is not used principally for agricultural purposes.

**26. Attorneys' Fees.** Lender shall be entitled to recover its reasonable attorneys' fees and costs in any action or proceeding to construe or enforce any term of this Security Instrument. The term "attorneys' fees," whenever used in this Security Instrument, shall include without limitation attorneys' fees incurred by Lender in any bankruptcy proceeding or on appeal.

DOC ID #: 00022034406404010

ORAL AGREEMENTS OR ORAL COMMITMENTS TO LOAN MONEY, EXTEND CREDIT, OR TO
FORBEAR FROM ENFORCING REPAYMENT OF A DEBT ARE NOT ENFORCEABLE UNDER
WASHINGTON LAW.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security
Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)
JERRY HOANG                        - Borrower

_____ (Seal)
LE UYEN THY NGUYEN                 - Borrower

_____ (Seal)
                                   - Borrower

_____ (Seal)
                                   - Borrower

STATE OF WASHINGTON
County of        King                        } ss:
     On this day personally appeared before me _____
             Jerry Hoang  and
             Le Uyen Thi Nguyen

to me known to be the individual(s) described in and who executed the within and foregoing instrument, and
acknowledged that he/she/they signed the same as his/her/their free and voluntary act and deed, for the uses and
purposes therein mentioned.
     GIVEN under my hand and official seal this _____ 30th _____ day of April 2010 .

                                    _____
                                    Notary Public in and for the State of Washington, residing at
                                            Renton, WA
                                    My Appointment Expires on    12-19-2012

NOEMI C. GARCIA
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
DECEMBER 19, 2012

WASHINGTON--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT (MERS)        Form 3048 1/01
MERS Deed of Trust-WA
2006A-WA (08/08)                    Page 11 of 11



**STATE OF WASHINGTON**
**County of King** }

The Director of Records & Licensing, King County, State of
Washington and exofficio Recorder of Deeds and other
instruments, do hereby certify the foregoing copy has been
compared with the original instrument as the same appears
on file and of record in the office and that the same is a true
and perfect transcript of said original and of the whole thereof.
Witness my hand and official seal this _____ day
of_____ **MAY 0 3 2013**   20____

Director of Records & Licensing

By_____
Deputy       ,

**Priscilla Harper**

# Exhibit 6

## Case No.: 2:17-cv-00874-JLR

*Jerry Hoang et al. v. Bank of America N.A. et al.*

# AFFIDAVIT OF
# JERRY HOANG & LE UYEN THI NGUYEN.

Re: Assessor's Property Tax Parcel Number 261320-0153-06.
  Property address: 13522 43rd Ave S Tukwila, WA 98168.
  Bank of America, N.A Mortgage account # 220344064.


I, Jerry Hoang and Le Uyen Thi Nguyen, the undersigned, with personal knowledge of matters set forth herein, one of the people of the State of Washington, in correct public capacity, being of majority in age, competent to testify with clean hands, without waiving any rights, remedies, or defenses.


I, Jerry Hoang and Le Uyen Thi Nguyen declares, verifies and affirms that the facts stated herein are true, correct, and complete in all material fact, not misrepresented and made under the penalties of perjury of the laws of the United States of America and the Laws of the State of Washington.


We state as follow:


1. On April 30, 2010, Jerry Hoang and Le Uyen Thi Nguyen did not received " Notice of right to cancel" from Loan's officer.


2. On April 15, 2013, we have sent a NOTICE OF RESCISSION / CANCELLATION of a Mortgage Loan above (See Exhibit A) by Certified

Mail and Return Receipt through the US Postal Services to the Parties listed below:

Bank of America, N.A
101 South Tryon St.
Charlotte, North Carolina 28202
Certified Mail # 7007 2560 0000 6131 7416

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
1818 Library Street
Suite 300
Reston, VA 20190-6280
Certified Mail # 7011 2970 0004 4254 8695

BAC Home Loans Servicing, LP
450 American Street
Simi Valley, CA 93065.
Certified Mail # 7011 2970 0004 4254 8701

BAC Home Loans Servicing, LP
400 National Way
Simi Valley, CA 93065.
Certified Mail # 7007 2560 0000 6131 7409

Fannie Mae
13100 Worldgate Drive
Herndon, Virginia 20170.
Certified Mail # 7011 2970 0004 4254 8718

3.      As of this present time, none of the Parties listed above has taken any legal action required by Law to vacate or terminate the validity of such Rescission / Cancellation of the Mortgage Loan contract.


Respectfully Submitted

Dated: This 14th day of August 2015

By: _____
Jerry Hoang

PO, Box 98032

Des Moines, WA 98198

### Notary Statement

State of Washington}

           } ss

County of King    }

BE IT REMEMBERED, that on the _14th_ day of _August_, _2015_, before me, the undersigned, a Notary Public in and for the State of Washington, personally appeared, Jerry Hoang who proved to me to be the same individual who executed the within instrument, and, affirmed that he is personally fully aware of the contents and accuracy of the statements made therein, and affirms that the document is, to the very best of his knowledge, true and correct.

IN TESTIMONY WHEREOF, I have hereunto set my hand and affixed my Official seal the day and year last above written.

By: _____

Nataliya A Khochay

Notary Public for _BECU_

Commission Expires on _February 28, 2018_

NATALIYA A. KHOCHAY
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
FEBRUARY 28, 2018

Page 3 of 4

Dated: This 14th day of August 2015

By: _____

Le Uyen Thi Nguyen

13522 43rd Ave So

Tukwila, WA 98168.

**Notary Statement**

State of Washington}

　　　　　　　　　　} ss

County of King　　　}

BE IT REMEMBERED, that on the _14th_ day of _August_, _2015_,

before me, the undersigned, a Notary Public in and for the State of

Washington, personally appeared, Le Uyen Thi Nguyen who proved to

me to be the same individual who executed the within instrument, and,

affirmed that he is personally fully aware of the contents and accuracy

of the statements made therein, and affirms that the document is, to the

very best of his knowledge, true and correct.

　　　IN TESTIMONY WHEREOF, I have hereunto set my hand and

affixed my Official seal the day and year last above written.

By: _____

_Nataliya P Khochay_

Notary Public for _BELL_

Commission Expires on _February 28, 2018_

NATALIYA A. KHOCHAY
NOTARY PUBLIC
STATE OF WASHINGTON
COMMISSION EXPIRES
FEBRUARY 28, 2018

Page 4 of 4

# Exhibit 7

## Case No.: 2:17-cv-00874-JLR

*Jerry Hoang et al. v. Bank of America N.A. et al.*

Jerry Hoang and Le Uyen Thi Nguyen
13522 43rd Avenue South
Tukwila, WA 98168

April 15, 2013

**NOTICE OF RESCISSION/CANCELLATION**

RE:   Account Number: 220344064.

Concerning the loan transaction, which we have entered into with Bank of America, NA on April 28, 2010, we hereby exercise our right pursuant to the Federal Truth in Lending Act, 15 U.S.C. § 1635, Regulation Z § 226.23.

Federal Truth in Lending Act does not require us to notify you of any specific violation(s), however, in light of the current circumstances, below are several violations that triggered this notice.

On April 30, 2010, the alleged lender violated multiple counts of Truth in Lending Act.

   (a) Jerry Hoang did not receive the Right to Cancel Notice as required by law. All consumers with rescission rights must receive two copies of notice.

Regulation Z §226 .23(b)(1) *"Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind ... "*

   (b) Failure to deliver Notice of Rescission violated Regulation Z §226.23(b)(v) where Jerry Hoang would have had a required Notice where a specific date by which he would have had the right to Rescind/Cancel the transaction.

Regulation Z §226.23(b)(v): *"The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:*

*(v) The date the rescission period expires. "*

Page 1 of 1

Failure to disclose the date the rescission period expires on the Notice of the Right to Rescind left with consumer extends the rescission period up to three years after consummation.

> (c) Le Uyen Thi Nguyen did not receive any Material Disclosures and did not receive two Right to Cancel Notices at any time, as required by law.

Any consumer "whose ownership interest is or will be subject to the security interest" has the right to rescind the transaction and to receive the disclosures.

Regulation Z §226.23 (a)(I), *"Consumer's right to rescind In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction ".*

Regulation Z §226.23(b)(1) *"Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in section 226.36(b)). The notice shall be on a separate document that identifies the transaction (and shall clearly and conspicuously disclose the following.*
> *(i) The retention or acquisition of a security interest in the consumer's principal dwelling.*
> *(ii) The consumer's right to rescind the transaction.*
> *(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.*
> *(iv) The effects of rescission, as described in paragraph (d) of this section.*
> *(v) The date the rescission period expires.*

Regulation Z §226.23(3) *The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation."*

Failure to provide two copies of Notice of the Right to Cancel/Rescind to Le Uyen Thi Nguyen extends the rescission period up to three years after consummation. Failure to provide one copy of material disclosures to Le Uyen

Thi Nguyen extends the rescission period up to three years after consummation.

However, please be advised that this is not an exhaustive list, and we do not waive unlisted violations, as other violations may be uncovered through discovery. Therefore, we have a continuing right to rescind the April 30, 2010 loan transaction, which we are exercising under the law.

The security interest held by BANK OF AMERICA N.A. and/or BAC HOME LOANS SERVICING, LP and/or MORTGAGE ELECTRONIC SYSTEMS, INC., and/or FANNIE MAE is void upon our rescission. *See* 15 U.S.C. § 1635; Regulation Z § 226.23.

Pursuant to the Regulation, you have twenty (20) calendar days after receipt of this notice of rescission to return all monies paid and to take action necessary or appropriate to reflect termination of the security interest.

We are prepared to discuss a tender obligation, should it arise, and satisfactory ways in which we may meet this obligation upon creditor's performance of its statutory duties. Please be advised that if you do not cancel the security interest and return all consideration paid by us within twenty (20) calendar days of receipt of this letter, you will be responsible for actual and statutory damages pursuant to 15 U.S.C. § 1640 (a).

This Notice of Rescission/Cancellation was sent via Certified Mail Returned Receipt and Regular mail to the following businesses and addresses:

Bank of America, N.A
101 South Tryon St.
Charlotte, North Carolina 28202
Certified Mail # 7007 2560 0000 6131 7416

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
1818 Library Street
Suite 300
Reston, VA 20190-6280
Certified Mail # 7011 2970 0004 4254 8695

BAC Home Loans Servicing, LP
450 American Street
Simi Valley, CA 93065.
Certified Mail # 7011 2970 0004 4254 8701

BAC Home Loans Servicing, LP
400 National Way
Simi Valley, CA 93065.
Certified Mail # 7007 2560 0000 6131 7409

Fannie Mae
13100 Worldgate Drive
Herndon, Virginia 20170.
Certified Mail # 7011 2970 0004 4254 8718

I WISH TO CANCEL                          I WISH TO CANCEL

_____                   _____
Jerry Hoang                               Le Uyen Thi Nguyen

04-15- 2013                               04|15|13
Date                                      Date

# EXHIBIT 8

CASE NO.: 2:17-cv-00874-JLR

*Jerry Hoang et al. v. Bank of America N.A. et al.*



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.46 | 0011 |
| Certified Fee | | $3.10 | |
| Return Receipt Fee (Endorsement Required) | | $2.55 | |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 | |
| Total Postage & Fees | $ | $6.11 | 04/15/2013 |

Sent To _Bea, NA_
Street, Apt No.; or PO Box No. _101 So Tryon St_
City, State, ZIP+4 _Charlotte, NC 28202_

**SENDER:**

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature Pitney Bowes on behalf of Bank of America
X ☐ Agent ☐ Addressee
B. Received by (Printed Name) C. Date of Delivery 4/19/13

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

1. Article Addressed to:

_Bank of America_
_101. So Tryon St_
_Charlotte, NC_
_28202_

3. Service Type
☑ Certified Mail ☐ Express Mail
☐ Registered ☐ Return Receipt for Merchandise
☐ Insured Mail ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

2. Article Number (Transfer from service label) 7007 2560 0000 6131 7416

PS Form 3811, February 2004 Domestic Return Receipt

**UNITED STATES POSTAL SERVICE**

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

**JERRY HOANG**
**LE UYEN THI NGUYEN**

980 EE 1 113C 00 04/23/13
NOTIFY SENDER OF NEW ADDRESS
HOANG JERRY
PO BOX 98032
DES MOINES WA 98198-0032

BC: 98198003232 *2589-07962-23-40

**U.S. Postal Service**
**CERTIFIED MAIL. RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

| | | |
|---|---|---|
| Postage | $ | $0.46 |
| Certified Fee | | $3.10 |
| Return Receipt Fee (Endorsement Required) | | $2.55 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.11 |

7011 2970 0004 4254 8718

Sent To
FANNIE MAE
Street, Apt. No.; or PO Box No. 13100 WORLDGATE DR
City, State, ZIP+4 HERNDON, VA 20170

---

SENDER:

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

FANNIE MAE
13100 WORLDGATE -DR
HERNDON, VA
20170

A. Signature
X
☐ Agent
☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
A. BROWN    4/9

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail    ☐ Express Mail
☐ Registered    ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)    ☐ Yes

2. Article Number (Transfer from service label)    7011 2970 0004 4254 8718

PS Form 3811, February 2004    Domestic Return Receipt

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

**JERRY HOANG**

980 6E 1 113C 00 04/22/13
NOTIFY SENDER OF NEW ADDRESS
HOANG JERRY
PO BOX 98032
DES MOINES WA 98198-0032

BC: 98198003232    *1017-07231-18-39

8320422



U.S. Postal Service
CERTIFIED MAIL · RECEIPT
(Domestic Mail Only; No Insurance Coverage Provided)

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.46 |
| Certified Fee | | $3.10 |
| Return Receipt Fee (Endorsement Required) | | $2.55 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.11 |

04/15/2013

7011 2970 0004 4254 8695

Sent To  M.E.R.S
Street, Apt. No.; or PO Box No.  1818 LIBRARY ST # 300
City, State, ZIP+4  RESTON, VA  20190



SENDER: COMPLETE THIS SECTION

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

M.E.R.S
1818 LIBRARY ST
# 300
RESTON, VA
20190

B. Received by  RECEIVED

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

MERS

3. Service Type
☐ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number (Transfer from service label)   7011 2970 0004 4254 8695

PS Form 3811, February 2004      Domestic Return Receipt

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

JERRY HOANG
LE UYEN THI NGUYEN
13522 43RD AVE S
TUKWILA, WA 98168



**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.46 |
| Certified Fee | | $3.10 |
| Return Receipt Fee (Endorsement Required) | | $2.55 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.11 |

Sent To K.A.C

Street, Apt. No.; or PO Box No. 600 — NATIONAL WAY

City, State, ZIP+4 CA. 93065

7007 2560 0000 6131 7409

---

**SENDER:** ...

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
DAVID Quintanilla ☑ Agent ☐ Addressee

B. Received by (Printed Name)     C. Date of Delivery

1. Article Addressed to:

K. A. C
600 NATIONAL WAY
Simi Valley, CA
93065

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

SIMI APR 18 2013

3. Service Type
☑ Certified Mail   ☐ Express Mail
☐ Registered      ☐ Return Receipt for Merchandise
☐ Insured Mail    ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)   ☐ Yes

2. Article Number (Transfer)   7007 2560 0000 6131 7409

PS Form 3811, February 2004      Domestic Return Receipt

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

JERRY HOANG
HOANS522   981684056-1113   04/26/13
NOTIFY SENDER OF NEW ADDRESS
HOANG JERRY
PO BOX 98032
DES MOINES WA 98198-0032



U.S. Postal Service
CERTIFIED MAIL · RECEIPT
*(Domestic Mail Only; No Insurance Coverage Provided)*

For delivery information visit our website at www.usps.com

OFFICIAL USE

| | | |
|---|---|---|
| Postage | $ | $0.46 |
| Certified Fee | | $3.10 |
| Return Receipt Fee (Endorsement Required) | | $2.55 |
| Restricted Delivery Fee (Endorsement Required) | | $0.00 |
| Total Postage & Fees | $ | $6.11 |

Sent To  B A C
Street, Apt. No.; or PO Box No.  450 American ST
City, State, ZIP+4  CA  93065

PS Form 3800, August 2006

---

SENDER:

■ Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
■ Print your name and address on the reverse so that we can return the card to you.
■ Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature
X  DAVID Quintanilla  ☐ Agent  ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery

1. Article Addressed to:

B. A.
450 American ST
Simi Valley, CA
93065

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

APR 18 2013

3. Service Type
☐ Certified Mail  ☐ Express Mail
☐ Registered  ☐ Return Receipt for Merchandise
☐ Insured Mail  ☐ C.O.D.

4. Restricted Delivery? (Extra Fee)  ☐ Yes

2. Article Number (Transfer from service label)   7011 2970 0004 4254 8701

PS Form 3811, February 2004   Domestic Return Receipt   102595-02-M-1540

---

UNITED STATES POSTAL SERVICE

First-Class Mail
Postage & Fees Paid
USPS
Permit No. G-10

• Sender: Please print your name, address, and ZIP+4 in this box •

**JERRY HOANG**
**LE UYEN THI NGUYEN**

        980   EE 1 113C 00 04/23/13
NOTIFY SENDER OF NEW ADDRESS
HOANG 'JERRY
PO BOX 98032
DES MOINES WA 98198-0032

BC: 98198003232   *3062-07430-18-40
llulululuulllulululdlullluullululululuullludl

# Exhibit 9

### Case No.: 2:17-cv-00874-JLR

*Jerry Hoang et al. v. Bank of America N.A. et al.*

**Return Address:**

**JERRY HOANG**
**LE UYEN THI NGUYEN**
**PO BOX 98032**
**DES MOINES, WA 98198**



```
20150813000493
HOANG                    N
PAGE-001 OF 005          76.00
08/13/2015 13:09
KING COUNTY, WA
```

Please print or type information WASHINGTON STATE RECORDER'S Cover Sheet (RCW 65.04)

| |
|---|
| **Document Title(s)** (or transactions contained therein): (all areas applicable to your document **must** be filled in)<br>**1. NOTICE OF RESCISSION / CANCELLATION** |
| **Reference Number(s) of Documents assigned or released:**<br>Additional reference #'s on page 4 of document |
| **Grantor(s) Exactly as name(s) appear on document**<br>**1. JERRY HOANG**<br>**2. LE UYEN THI NGUYEN** |
| **Grantee(s) Exactly as name(s) appear on document**<br>  1. **BANK OF AMERICA, N/A (BOA).**<br>  2. **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC (MERS).**<br>  3. **BAC HOME LOANS SERVICING, LP (BAC).**<br>  4. **FANNIE MAE.** |
| **Legal description** (abbreviated: i.e. lot, block, plat or section, township, range)<br>**FOSTTORIA GARDEN TRS, LOT 3 TGW UND INT IN TRACT A OF TUKWILA SP # L01-033 REC # 20040212900003 SD SP DAF-BEING LOT 19 OF SD PLAT LYING, PROPERTY ADDRESS 13522 43RD AVE SO TUKWILA, WA 98168** |
| **Assessor's Property Tax Parcel/Account Number** ☐ _Assessor Tax # not yet assigned<br> **261320-0153-06** |
| The Auditor/Recorder will rely on the information provided on this form. The staff will not read the document to verify the accuracy or completeness of the indexing information provided herein. |

"I am signing below and paying an additional $50 recording fee (as provided in RCW 36.18.010 and referred to as an emergency nonstandard document), because this document does not meet margin and formatting requirements. Furthermore, I hereby understand that the recording process may cover up or otherwise obscure some part of the text of the original document as a result of this request."

_____Signature of Requesting Party

Note to submitter: Do not sign above nor pay additional $50 fee if the document meets margin/formatting requirements

Jerry Hoang and Le Uyen Thi Nguyen
13522 43rd Avenue South
Tukwila, WA 98168

April 15, 2013

**NOTICE OF RESCISSION/CANCELLATION**

RE:    Account Number: 220344064.

Concerning the loan transaction, which we have entered into with Bank of America, NA on April 28, 2010, we hereby exercise our right pursuant to the Federal Truth in Lending Act, 15 U.S.C. § 1635, Regulation Z § 226.23.

Federal Truth in Lending Act does not require us to notify you of any specific violation(s), however, in light of the current circumstances, below are several violations that triggered this notice.

On April 30, 2010, the alleged lender violated multiple counts of Truth in Lending Act.

    (a) Jerry Hoang did not receive the Right to Cancel Notice as required by law. All consumers with rescission rights must receive two copies of notice.

Regulation Z §226 .23(b)(1) *"Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind ... "*

    (b) Failure to deliver Notice of Rescission violated Regulation Z §226.23(b)(v) where Jerry Hoang would have had a required Notice where a specific date by which he would have had the right to Rescind/Cancel the transaction.

Regulation Z §226.23(b)(v): *"The notice shall be on a separate document that identifies the transaction and shall clearly and conspicuously disclose the following:*

           *(v) The date the rescission period expires. "*

Page 1 of 1

Failure to disclose the date the rescission period expires on the Notice of the Right to Rescind left with consumer extends the rescission period up to three years after consummation.

      (c) Le Uyen Thi Nguyen did not receive any Material Disclosures and did not receive two Right to Cancel Notices at any time, as required by law.

Any consumer "whose ownership interest is or will be subject to the security interest" has the right to rescind the transaction and to receive the disclosures.

Regulation Z §226.23 (a)(I), *"Consumer's right to rescind In a credit transaction in which a security interest is or will be retained or acquired in a consumer's principal dwelling, each consumer whose ownership interest is or will be subject to the security interest shall have the right to rescind the transaction ".*

Regulation Z §226.23(b)(1) *"Notice of right to rescind. In a transaction subject to rescission, a creditor shall deliver two copies of the notice of the right to rescind to each consumer entitled to rescind (one copy to each if the notice is delivered by electronic communication as provided in section 226.36(b)). The notice shall be on a separate document that identifies the transaction (and shall clearly and conspicuously disclose the following.*
      *(i) The retention or acquisition of a security interest in the consumer's principal dwelling.*
      *(ii) The consumer's right to rescind the transaction.*
      *(iii) How to exercise the right to rescind, with a form for that purpose, designating the address of the creditor's place of business.*
      *(iv) The effects of rescission, as described in paragraph (d) of this section.*
      *(v) The date the rescission period expires.*

Regulation Z §226.23(3) *The consumer may exercise the right to rescind until midnight of the third business day following consummation, delivery of the notice required by paragraph (b) of this section, or delivery of all material disclosures, whichever occurs last. If the required notice or material disclosures are not delivered, the right to rescind shall expire 3 years after consummation."*

Failure to provide two copies of Notice of the Right to Cancel/Rescind to Le Uyen Thi Nguyen extends the rescission period up to three years after consummation. Failure to provide one copy of material disclosures to Le Uyen

Thi Nguyen extends the rescission period up to three years after consummation.

However, please be advised that this is not an exhaustive list, and we do not waive unlisted violations, as other violations may be uncovered through discovery. Therefore, we have a continuing right to rescind the April 30, 2010 loan transaction, which we are exercising under the law.

The security interest held by BANK OF AMERICA N.A. and/or BAC HOME LOANS SERVICING, LP and/or MORTGAGE ELECTRONIC SYSTEMS, INC., and/or FANNIE MAE is void upon our rescission. *See* 15 U.S.C. § 1635; Regulation Z § 226.23.

Pursuant to the Regulation, you have twenty (20) calendar days after receipt of this notice of rescission to return all monies paid and to take action necessary or appropriate to reflect termination of the security interest.

We are prepared to discuss a tender obligation, should it arise, and satisfactory ways in which we may meet this obligation upon creditor's performance of its statutory duties. Please be advised that if you do not cancel the security interest and return all consideration paid by us within twenty (20) calendar days of receipt of this letter, you will be responsible for actual and statutory damages pursuant to 15 U.S.C. § 1640 (a).

This Notice of Rescission/Cancellation was sent via Certified Mail Returned Receipt and Regular mail to the following businesses and addresses:

Bank of America, N.A
101 South Tryon St.
Charlotte, North Carolina 28202
Certified Mail # 7007 2560 0000 6131 7416

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.
1818 Library Street
Suite 300
Reston, VA 20190-6280
Certified Mail # 7011 2970 0004 4254 8695

Page 3 of 3

BAC Home Loans Servicing, LP
450 American Street
Simi Valley, CA 93065.
Certified Mail # 7011 2970 0004 4254 8701

BAC Home Loans Servicing, LP
400 National Way
Simi Valley, CA 93065.
Certified Mail # 7007 2560 0000 6131 7409

Fannie Mae
13100 Worldgate Drive
Herndon, Virginia 20170.
Certified Mail # 7011 2970 0004 4254 8718

I WISH TO CANCEL

Jerry Hoang

04-15- 2013
Date

I WISH TO CANCEL

Lê Uyen Thi Nguyen

04 15 13
Date